1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                   EASTERN DISTRICT OF WASHINGTON

7  JOHN DOE 1, JOHN DOE 2, JANE DOE            NO. 4:21-CV-5059-TOR
   1, JANE DOE 2, JANE DOE 3, and all
8  persons similarly situated,                 ORDER GRANTING
                                               PRELIMINARY INJUNCTION
9                          Plaintiffs,

10         v.

11  WASHINGTON STATE DEPARTMENT
    OF CORRECTIONS, and STEPHEN
12  SINCLAIR, Secretary of the Department
    of Corrections, in his official capacity,
13
                            Defendants,
14
15         and

16  BONNEVILLE INTERNATIONAL INC.,
    a Utah Corporation d.b.a. KIRO RADIO
17  97.3 FM; THE MCCLATCHY
    COMPANY, LLC, a California Limited
    Liability Company d.b.a. THE TACOMA
18  NEWS TRIBUNE; and ANDREA
    KELLY, an individual,
19
                            Interested Parties.
20

ORDER GRANTING PRELIMINARY INJUNCTION ~ 1

1    BEFORE THE COURT is Plaintiffs' Motion for Preliminary Injunction

2    (ECF No. 7).  This matter was submitted for consideration with telephonic oral

3    argument on May 12, 2021.  Katherine M. Forster, Ethan D. Frenchman, Heather

4    L. McKimmie, Lisa Nowlin, Nancy L. Talner, Danny Waxwing, and Joseph R.

5    Shaeffer appeared on behalf of Plaintiffs.  Candie M. Dibble appeared on behalf of

6    Defendants.  Michele L. Earl-Hubbard appeared on behalf of Interested Party The

7    McClatchy Company, d.b.a. The Tacoma News Tribune.  Candice Jackson

8    appeared on behalf of Interested Party Andrea Kelly.  The Court has reviewed the

9    record and files herein, considered all the parties' oral arguments, and is fully

10   informed.  For the reasons discussed below, Plaintiffs' Motion for Preliminary

11   Injunction (ECF No. 7) is **GRANTED**.

12       The Court has subject matter jurisdiction over Plaintiffs' federal

13   constitutional and statutory claims pursuant to 42 U.S.C. § 1983, as well as 28

14   U.S.C. §§ 1331 and 1343.  The Court has supplemental jurisdiction pursuant to 28

15   U.S.C. § 1367 over Plaintiffs' state law constitutional and statutory claims, which

16   arise out of the same basis of operative facts as Plaintiff's federal claims.

17                         **BACKGROUND**

18       This case concerns three records requests that Defendants received pursuant

19   to Washington's Public Records Act ("PRA") seeking information related to

20

incarcerated transgender[1] individuals.  The requests were received following an interview with Pierce County Sherriff Ed Troyer on March 10, 2021, conducted by Dori Monson on KIRO 97.3 FM, to follow up on an anonymous email purportedly sent by a DOC employee alleging men were "claiming to be women" in order to transfer to women's prisons.  ECF No. 1 at 10, ¶ 4.5.

On March 12, 2021, Stacia Glenn of the Tacoma News Tribune requested the following records and information:

- "The number of transgender or gender non-conformists inmates who have been transferred to the Washington State Corrections Center for Women in Purdy in recent months.

- The dates the transgender or gender non-conformists inmates were moved to Purdy, and the facilities from which they were moved.

- The names and ages of the transgender or gender non-conformists inmates moved to Purdy and the convictions they are serving time for.

- The number of and any records or documents related to complaints or disciplinary action taken against the transgender or gender nonconformists inmates moved to Purdy."

ECF No. 1 at 11, ¶ 4.6.

On March 16, 2021, an individual named "Aaron" from KIRO 97.3 FM

---

[1] For purposes of this Order, the Court uses the term "transgender" as an umbrella term to include transgender, non-binary, gender non-conforming, and intersex individuals.

ORDER GRANTING PRELIMINARY INJUNCTION ~ 3

requested the following records and information from Defendants:

- "The number of transgender inmates currently housed in DOC prison facilities.

- The number of transgender inmates who are currently waiting to be transferred to a prison matching their sexual identity.

- The number of inmates evaluated and confirmed by DOC to be transgendered.

- The number of transfer requests made by transgender individuals that have been approved and denied.

- Records explaining the reasoning for any denial of a transgendered incarcerated request for transfer.

- The number of transgendered incarcerated individuals who have requested gender reassignment surgery.

- The number of transgendered incarcerated individuals who have requested and received gender reassignment surgery.

- The number of transgendered incarcerated individuals who are currently scheduled for gender reassignment surgery.

- The names of all transgendered incarcerated individuals who have requested, received or are scheduled for gender reassignment surgery.

- Any infractions, complaints, reports, concerns submitted by other staff or other incarcerated individuals regarding the following individuals: [Names omitted]

- Have four transgender inmates at the Washington Corrections Center for Women who have male names requested state assistance in obtaining gender re-assignment surgery?"

*Id*. at 11-12, ¶ 4.7.

ORDER GRANTING PRELIMINARY INJUNCTION ~ 4

On March 19, 2021, an individual named Andrea Kelly requested the following records and information from Defendants:

- "The number of transgender individuals currently incarcerated broken out by facility location.

- Number of incarcerated individuals who have been transferred from a men's facility to a women's facility since January 1, 2021.

- The number of male incarcerated individuals who identify as female, nonbinary or any other gender identity who are currently housed at a Women's prison facility.

- The number of incarcerated individuals who have transferred from a Women's facility to a Men's facility since January 1, 2021.

- The number of female incarcerated individuals who identify as male, nonbinary or any other gender identity who are currently housed in a Men's prison facility."

*Id*. at 12-13, ¶ 4.8.

On March 15, 2021 and March 23, 2021, Disability Rights Washington ("DRW"), one of Plaintiffs' counsel in this matter, was notified of the three records requests by the Corrections Division of the Washington Office of the Attorney General ("Attorney General").  *Id*. at 16, ¶ 4.19.  The communication between the parties was prompted by the structured negotiations agreement between DRW and Defendant Department of Corrections ("DOC"), which began in December 2019 as an alternative to litigation regarding DRW's concerns over the treatment of transgender, intersex, and gender non-binary individuals with disabilities.  *Id*. at ¶

ORDER GRANTING PRELIMINARY INJUNCTION ~ 5

4.18.  DRW remains in close contact with DOC and its counsel at the Attorney General's Office regarding the treatment of such individuals.  *Id*.

In response to PRA records requests generally, Defendants do not compile or create new records to disseminate aggregate numerical information, such as the information requested here.  ECF Nos. 1 at 17, ¶ 4.20; 32 at 5, ¶ 5.  Rather, Defendants identify and release certain records from which requestors can derive the information they seek.  *Id*.  With respect to the requests at issue, Defendants did not provide DRW with a list of records they identified as responsive prior to the initiation of this litigation.  ECF No. 1 at 17, ¶ 4.20.  However, DRW believed, based on its knowledge of DOC records, that the identified documents may include highly sensitive and confidential information regarding transgender inmates and former inmates.  *Id*.  Defendants' counsel indicated DOC did not intend to invoke any of the exceptions under the PRA to prevent disclosure of the records, but they would redact information from the documents as statutorily required.  ECF Nos. 7 at 16-17, ¶ 4.19; 32 at 14, ¶ 22.

Plaintiffs allege disclosure of the requested information threatens their health, safety, and privacy because the records contain highly confidential information that directly or indirectly pertains to Plaintiffs' status as transgender. ECF No. 7 at 4-5; *see also* ECF No. 1 at 13-15, ¶¶ 4.9-4.15 (discussing increased likelihood of sexual victimization for transgender inmates).  For example, DOC

screens inmates to collect information regarding their sexual assault history, gender identity, and medical information.  ECF No. 1 at 8-9, ¶ 4.2.  Inmates may also request accommodations for gender-affirming property and medical care by filling out a DOC Preferences Request form, which indicates their search preferences, confidentiality preferences, and housing safety concerns.  ECF Nos. 7 at 6-7; 32 at 3-4, ¶ 2.  Such information is collected to comply with the Prison Rape Elimination Act ("PREA"), 34 U.S.C. § 30301 *et seq*. *Id*.; ECF No. 1 at 9, ¶ 4.2.  The Preferences Request forms are kept on a secure database that is accessible to a limited number of staff.  ECF No. 32 at 4, ¶ 2.  Similarly, DOC periodically reviews housing preferences for transgender individuals to ensure they are appropriately placed in facilities consistent with their preferences.  *Id*. at ¶ 3.  The housing assessments are also stored on a secure database accessible by a limited number of staff.  *Id*.

The Deputy Director of Prisons maintains a spreadsheet to help manage DOC records for transgender individuals in order to comply with the federal mandates of PREA.  ECF No. 32 at 4-5, ¶ 4.  The spreadsheet contains information such as an inmate's name, DOC identification number, current facility location, preferred pronouns, search preferences, dates of housing reviews, and a computer pathway link to their most recent housing review.  *Id*.  The spreadsheet is stored on a secure database accessible by a limited number of staff.  *Id*.  Plaintiffs fear the

release of such information could be pieced together to reveal their identity, transgender status, and location.  ECF No. 7 at 8.

DOC policies require the above information to be kept confidential and disclosed only on a need-to-know basis.  ECF No. 7 at 7.  For example, DOC Policy 490.700, Transgender, Intersex, and/or Gender Non-Conforming Housing and Supervision, states that "[a]n individual's sexual orientation, gender expression/transition status, intersex status, or gender identity will be maintained as confidential and will only be disclosed on a need to know basis."  *Id*.  Similarly, DOC Policy 490.820, PREA Risk Assessments and Assignments, states "[a]n offender's transgender/intersex status will be maintained as confidential and only disclosed on a need to know basis."  *Id*.

Defendants have now included a list of documents they identified as responsive to at least some of the records requests.  ECF No. 32 at 13, ¶ 21; at 16-18.  The documents include the internal tracking spreadsheet; Housing Review/MDT forms; infraction records; PREA investigation records; and Legal Face Sheets.  ECF No. 32 at 16-18.  Defendants argue there is no authority that exempts from disclosure an individual's transgender status.  ECF No. 32 at 14, ¶ 22; at 15, ¶ 26.

Plaintiffs seek a preliminary injunction enjoining Defendants from releasing "any records (including names and numbers) that identify transgender, non-binary,

gender non-conforming, and/or intersex current or former prisoners, as well as their sexual history, sexual orientation, sexual victimization, genital anatomy, and/or mental health and medical information, including any records concerning their transfer requests, discipline, PREA investigations and allegations, or gender-affirming surgery."  ECF No. 51.

## DISCUSSION

### I.    Preliminary Injunctive Relief—Constitutional Claims

Pursuant to Federal Rule of Civil Procedure 65, the Court may grant preliminary injunctive relief to prevent "immediate and irreparable injury."  Fed. R. Civ. P. 65(b)(1)(A).  To obtain this relief, a plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable injury in the absence of preliminary relief; (3) that a balancing of the hardships weighs in plaintiff's favor; and (4) that a preliminary injunction will advance the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012).  Under the *Winter* test, a plaintiff must satisfy each element for injunctive relief.

Alternatively, the Ninth Circuit also permits a "sliding scale" approach under which an injunction may be issued if there are "serious questions going to the merits" and "the balance of hardships tips sharply in the plaintiff's favor," assuming the plaintiff also satisfies the two other *Winter* factors.  *All. for the Wild*

*Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) ("[A] stronger showing of one element may offset a weaker showing of another."); *see also Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) ("We have also articulated an alternate formulation of the *Winter* test, under which serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." (internal quotations and citation omitted)).

### A. Likelihood of Success on the Merits

To obtain injunctive relief, Plaintiffs must show that there are "serious questions going to the merits" of their claims, and that they are likely to succeed on those questions of merit. *Cottrell*, 632 F.3d at 1131; *Farris*, 677 F.3d at 865. Defendants contend Plaintiffs are unlikely to succeed on the merits because Plaintiffs cannot demonstrate Defendants' statutory obligation to release the records amounts to a constitutional violation. ECF No. 32 at 19.

Interested party, the McClatchy Company, contends that the Court should not impose a preliminary injunction without personally reviewing each individual document intended to be disclosed. It contends the information sought will not meet the preliminary injunction standard. However, Defendant affirmatively represents that information related to an inmate's sexual orientation, sexual history,

or history of alleged sexual victimization contained outside of a medical record, will be disclosed.  ECF No. 32 at 15.  Additionally, if an inmate discloses this information in order to file a grievance or some other record, the information will be disclosed.  *Id*.  Thus, when an inmate seeks to obtain the protections of PREA and discloses confidential information, the DOC maintains this information as confidential, until a PRA request seeks public disclosure.  *Id*. at 15-16.

### i.  Eighth Amendment

Plaintiffs assert the disclosure of the requested documents is tantamount to cruel and unusual punishment in violation of the Eighth Amendment.  ECF No. 7 at 14.  Defendants respond that Plaintiffs' Eighth Amendment claim will fail because Plaintiffs cannot demonstrate a substantial risk of harm or that Defendants acted with deliberate indifference to Plaintiffs' health and safety.  ECF No. 32 at 21-26.

It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Farmer v. Brennan*, 511 U.S. 825, 832, (1994) (citation omitted). In addition to ensuring inmates receive adequate food, shelter, and medical attention, prison officials must also take reasonable steps to ensure the safety of incarcerated individuals.  *Id*. (citation omitted).  Specifically, prison officials have a duty to protect incarcerated individuals from violent acts carried out by other

prisoners. *Id*. at 833. "[G]ratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective." *Id*. (internal quotations, brackets, and citation omitted). While not every violent act carried out against a fellow inmate constitutes an Eighth Amendment violation, "deliberate indifference to a substantial risk of serious harm" does rise to the level of a constitutional violation. *Id*. at 828 (internal quotations and citations omitted).

To succeed on a claim under the Eighth Amendment alleging a failure to prevent future harm, such as the claim here, a prisoner must meet two elements. *Farmer*, 511 U.S. at 834. First, the prisoner must establish he or she is being incarcerated under conditions that pose a substantial risk of serious harm. *Id*. Second, a prisoner must show the prison official acted with deliberate indifference to the prisoner's health or safety. *Id*. As to the first element, "a prisoner can establish exposure to a sufficiently serious risk of harm by showing that he [or she] belongs to an identifiable group of prisoners who are frequently singled out for violent attack by other inmates." *Id.* at 843 (quotations and citation omitted). Courts have routinely found that transgender prisoners are at increased vulnerability to abuse in the prison systems. *See, e.g.*, *Zollicoffer v. Livingston*, 169 F. Supp. 3d 687, 696 (S.D. Tex. 2016) (stating "[t]he vulnerability of transgender prisoners to sexual abuse in no secret" and citing a report conducted in 2011 by the Bureau of Justice Statistics that found "34.6% of transgender inmates

1  reported being the victim of sexual assault," which was "nearly nine times the rate

2  for all prisoners"); *Doe v. D.C.*, 215 F. Supp. 3d 62, 75 (D.C. Cir. 2016); *Tay v.*

3  *Dennison*, 457 F. Supp. 3d 657, 684 (S.D. Ill. 2020).

4       Regarding the second element, deliberate indifference occurs when a prison

5  official is both aware of facts from which an inference could be drawn that a

6  substantial risk of serious harm exists, and the prison official must also draw that

7  inference. *Farmer*, 511 U.S. at 837. Whether the official had knowledge is a

8  question of fact provable "in the usual ways, including inference from

9  circumstantial evidence." *Id.* at 842. "The very fact that the risk was obvious"

10 may be sufficient to prove knowledge. *Id*.

11      Here, Plaintiffs are transgender individuals and are, therefore, at an

12 increased risk of abuse while incarcerated. Thus, Plaintiffs are likely to succeed as

13 to the first element of their Eighth Amendment claim. As to the second element,

14 Defendants argue Plaintiffs' Eighth Amendment claim will fail because any

15 increased risk to Plaintiffs' safety resulting from the disclosure of the records is

16 merely speculative. ECF No. 32 at 22. Specifically, they argue Plaintiffs have not

17 pointed to "any tangible evidence" that the identified documents "actually contain"

18 the information Plaintiffs are concerned will be released or that the release of the

19 records will result in an excessive risk to Plaintiffs' safety. ECF No. 32 at 22-23.

20      Defendants' arguments run contrary to the law and to well-documented

evidence regarding violence against transgender inmates.  Defendants focus on the details contained in each individual document, and whether, and to what extent, each Plaintiffs' transgender status is known within their respective facilities.  ECF No. 32 at 23.  Defendants fail to account for the effect of the disclosures when taken as a whole.  While each individual document or file for each individual Plaintiff may only contain snippets of information, the aggregate data could easily be pieced together, revealing an individual's transgender status, location, medical history, and other highly confidential information.  Even where certain individuals openly disclose their transgender status within the prison system, the disclosures threaten other individuals who have not made such disclosures.  In any event, an individual's choice to live openly does not necessarily reduce the threats to their safety as a transgender person.  *See* ECF No. 1 at 13-15, ¶¶ 4.9-4.15.

Prison officials will not escape liability for deliberate indifference, regardless of whether the risk of harm is to one prisoner in particular or to all similarly situated prisoners.  *See Farmer*, 511 U.S. at 843.  The Court finds the risk to Plaintiffs is obvious, such that Plaintiffs are likely to succeed on the second element of deliberate indifference.

Because Plaintiffs are members of a group of prisoners who are frequently targeted for attack by other prisoners, and this fact is well-understood and obvious within prison systems, Plaintiffs are likely to succeed on the merits of their Eighth

1  Amendment claim.

2          *ii. Fourteenth Amendment*

3          Plaintiffs contend they will succeed on their Fourteenth Amendment claim

4  because their status as transgender is constitutionally protected.  ECF No. 7 at 19.

5  Defendants argue there is no fundamental right to privacy in one's "gender

6  identity."  ECF No. 32 at 27.

7          A state action that infringes upon a fundamental right will be upheld so long

8  as the action furthers a compelling state interest and is narrowly tailored to serve

9  that interest.  *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 780 (9th Cir. 2014)

10  (citation omitted).  In the context of prisons, an action or regulation that infringes

11  an inmate's constitutional rights is valid only if it is reasonably related to a

12  legitimate penological interest.  *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir.

13  1999) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  While it is well-settled

14  that a right to privacy is a fundamental right, the specific contours of that right,

15  particularly as it applies to transgender status, are not well delineated.  The Ninth

16  Circuit has not addressed the right to privacy in the context of a prisoner's

17  transgender status.  However, the Court finds similar cases outside the Ninth

18  Circuit instructive.

19          In *Powell v. Schriver*, the plaintiff was a prisoner who had undergone

20  gender-affirming surgery prior to her incarceration.  *Powell*, 175 F.3d at 109.

During an escort within the prison, one correction officer revealed to another correction officer, in the presence of other inmates, that the plaintiff was transgender and HIV positive. *Id.* The Second Circuit extended its holding in *Doe v. City of New York*, 15 F.3d 264 (2d. Cir. 1994), finding the right to privacy, including the right to protect information about one's health, applied to transgender prisoners. *Powell*, 175 F.3d at 112 ("individuals who are [transgender] are among those who possess a constitutional right to maintain medical confidentiality"). Additionally, the court did not find the disclosure narrowly tailored to serve a legitimate penological interest, "especially given that, in the sexually charged atmosphere of most prison settings, such disclosure might lead to inmate-on-inmate violence." *Id.* at 113.

Outside the context of the prison system, in *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998), the city released undercover officer personnel information to the defense counsel on a drug conspiracy case involving a violent gang. *Id.* at 1059. The information contained the officers' addresses and phone numbers, banking information, responses to questions about their personal lives asked during polygraph tests, and the names, addresses, and phone numbers of immediate family members. *Id.* The court found the release of the information posed a significant threat to the officers and their families. *Id.* at 1062. Thus, the court held that where the release of personal information places an individual at

substantial risk of bodily harm, or a perceived risk of harm, a constitutionally

protected privacy interest will be implicated.  *Id*. at 1064.  Further, the court found

the release was not narrowly tailored to serve a compelling government interest

because the information that was disclosed was not related to government

accountability or helping the public understand the internal workings of the police

agency.  *Id*. at 1065.

Finally, another case outside the prison context, *Love v. Johnson*, 146 F.

Supp. 3d 848 (E.D. Mich. 2015), synthesized the reasonings in *Powell* and

*Kallstrom* and applied it to disclosure of an individual's transgender status.  There,

the plaintiffs were transgender individuals challenging Michigan's policy for

changing a person's sex on their driver license.  *Id*. at 851.  The plaintiffs alleged

the policy indirectly required them to disclose their transgender status to complete

strangers, in violation of their constitutionally protected right to privacy.  *Id*. at

852.  The court agreed, finding the right to privacy that protected a transgender

person's medical information (the reasoning in *Powell*) and the right to privacy

that protected an individual's personal information (the reasoning in *Kallstrom*)

also encompassed the right to protect an individual's transgender status.  *Id*. at 856.

The court reasoned that both *Powell* and *Kallstrom* emphasized "the risk of

physical harm stemming from the disclosure of certain personal information."  *Id*.

at 855.  Additionally, the "plethora of evidence" presented by the plaintiffs

demonstrated that disclosure of a person's transgender status posed a very real

threat to a person's security and bodily integrity.  *Id*. at 855.  Consequently, the

court held requiring individuals to disclose their transgender status implicated a

fundamental right to privacy.  *Id*. at 856.  The court did not reach whether the

disclosure was narrowly tailored as the motion was decided at the dismissal stage.

*Id*. at 857.

Defendants assert those cases are inapplicable because they do not stand for

the proposition that transgender status is a protected category and no other

authority within the Ninth Circuit has identified transgender status as a protected

status.  ECF No. 32 at 27-28.  While Defendants are correct to the extent that the

Ninth Circuit has not directly addressed the issue, it is not beyond the realm of

possibility that the Ninth Circuit would find transgender status a protected class

given its treatment of transgender issues in other areas of the law.  *See, e.g.*,

*Karnoski v. Trump*, 926 F.3d 1180 (9th Cir. 2019) (holding review of military

policy regarding transgender status that allegedly violated equal protection and

substantive due process rights under the Fifth Amendment required "something

more than rational basis but less than strict scrutiny"); *Parents for Priv. v. Barr*,

949 F.3d 1210 (9th Cir.) (holding a school district's "carefully-crafted Student

Safety Plan seeks to avoid discrimination and ensure the safety and well-being of

transgender students" and that a policy allowing transgender students to use

bathrooms and locker rooms in the same manner as cisgender students did not

infringe cisgender students' Fourteenth Amendment privacy rights); *Edmo v.*

*Corizon, Inc.*, 935 F.3d 757 (9th Cir. 2019) (finding a prison official's denial of

gender-affirming surgery to treat gender dysphoria was a violation of the Eighth

Amendment in light of the increased awareness regarding transgender health).

Additionally, it is difficult to imagine any circumstances under which the

disclosure of a prisoner's transgender status to the general public serves a

penological purpose. *Powell*, 175 F.3d at 113 (citation omitted). While

Defendants have an interest in complying with their statutory duty to release

records upon request, the proposed disclosures do not appear narrowly tailored to

serve a legitimate penological purpose. The requests seek aggregate data relating

to transgender inmates, but the documents identified for release may contain

information beyond what is requested, which could be pieced together to reveal the

specific identities and locations of those inmates.

For these reasons, the Court finds Plaintiffs are likely to succeed on the

merits of their Fourteenth Amendment claim.

### iii. *Washington State Constitution, Article I, Section 7*

Plaintiffs argue the proposed disclosures are not "carefully tailored" or

limited to what is "reasonably necessary" to promote Defendants' valid

governmental interest. ECF No. 7 at 24. Defendants respond Plaintiffs'

1   Washington State Constitutional claims will fail because Plaintiffs fail to show

2   how releasing the records would be "highly offensive," and because some

3   Plaintiffs have already disclosed their transgender statuses.  ECF No. 32 at 30.

4          Washington State Constitution Article I, Section 7 states, "[n]o person shall

5   be disturbed in his private affairs, or his home invaded, without authority of law."

6   *Washington Pub. Emps. Ass'n v. Washington State Ctr. for Childhood Deafness &*

7   *Hearing Loss*, 194 Wash. 2d 484, 504 (2019).  Washington courts recognize two

8   interests protected by the right to privacy: "the right to autonomous decision-

9   making and the right to nondisclosure of intimate personal information, or

10  confidentiality."  *Id*. (citations omitted).  Cases alleging Article I, Section 7

11  violations with regard to personal information generally involve the disclosure of

12  information such as a person's name, address, telephone number, birthdate,

13  employment history, and criminal convictions.  *See, e.g.*, *Ino Ino, Inc. v. City of*

14  *Bellevue*, 132 Wash. 2d 103 (1997); *O'Hartigan v. Dep't of Pers.*, 118 Wash. 2d

15  111 (1991); *Peninsula Counseling Ctr. v. Rahm*, 105 Wash. 2d 929 (1986).  Under

16  those circumstances, the right to confidentiality has not been recognized as a

17  fundamental right subject to strict scrutiny.  *Washington Pub. Emps. Ass'n*, 194

18  Wash. 2d at 504.  Rather, courts apply a rational basis analysis to determine

19  whether disclosure of personal information serves a legitimate government interest,

20  is carefully tailored to serve that interest, and is no greater than necessary.  *Id* at

ORDER GRANTING PRELIMINARY INJUNCTION ~ 20

505.

The Washington Supreme Court has not addressed the release of more intimate information, such as the information at issue here. Thus, it is unclear whether rational basis would still apply or whether a heightened scrutiny would be more appropriate. In *Washington Pub. Emps. Ass'n*, the Court declined to adopt a stricter standard when it analyzed the disclosure of personal identification information such as birth date information. *Id.* at 507. The Court reasoned information like a person's birthdate "is widely available in the public domain and does not involve the same level of intimacy as, for example, mental health records or sexual history, which have been deemed private affairs." *Id.* The Court did not indicate what level of scrutiny would be appropriate for more intimate information but seemed to imply the standard should be something more than rational basis. Therefore, it is not beyond the realm of possibility that the Washington Supreme Court may deem intimate personal information that is not widely available in the public domain, such as a person's transgender status, as a protected privacy interest that would be more appropriately analyzed under a heightened scrutiny.

Regardless of the standard that is applied, the Court finds Plaintiffs have alleged sufficient factual allegations to succeed on the merits of their Article I, Section 7 claim. While Defendants have a legitimate interest in fulfilling their statutory duty and an interest in promoting government transparency, the proposed

release is not carefully tailored nor is it limited to what is no greater than necessary.

Defendants do not track aggregate numerical data on the information sought. ECF No. 32 at 5, ¶ 5. Instead, Defendants plan to release documents such as the DOC Preferences Request forms, the internal spreadsheet used to track those forms, inmate legal face sheets, housing protocol forms specific to transgender inmates, and other similar documents, which Defendants will redact as they deem necessary for statutory compliance. ECF No. 32 at 16-18. Defendants state they will redact social security numbers and information related to medical information contained in a medical file, but they will not withhold information related to an individual's gender identity or sexual history, as they are not under a statutory duty to withhold such information. ECF No. 32 at 14-16, ¶¶ 22-27. While each individually redacted document may not reveal identifying information, the disclosure taken as a whole could be pieced together to reveal an individual's identity, transgender status, and facility location.

Moreover, while Defendants claim some Plaintiffs (named or in the proposed class) have already disclosed their transgender status or checked a box on a form that indicates whether the individual wants to keep this information confidential from other individuals, see ECF No. 33-2 at 2, there is no showing that the individuals knowingly and voluntarily understood that their information would

be shared with the public through a public disclosure request or that it would be distributed beyond the personnel necessary to act upon their housing and safety requests.

Given the serious and probable safety concerns posed by Defendants' disclosure, the Court does not find the release of the proposed documents carefully tailored nor is the disclosure no greater than necessary. Defendants' legitimate interest in promoting governmental transparency and complying with its statutory duty under the PRA cannot overcome Plaintiffs' safety concerns. Consequently, Plaintiffs are likely to succeed on the merits of their Washington state constitutional claim.

Based on the foregoing, the Court finds Plaintiffs have shown there are serious questions going to the merits of their claims and that they are likely to succeed on the merits of their state and federal constitutional claims.

## B.    Likelihood of Irreparable Injury

Plaintiffs assert they will suffer irreparable harm if the records are released because they will face an increased risk of harassment, violence, and sexual assault by other inmates and correctional staff. ECF No. 7 at 24. Plaintiffs also argue the harm will not end upon release; they will face ongoing discrimination and other barriers in many facets of daily life. ECF No. 7 at 25. Defendants argue Plaintiffs will not suffer irreparable harm because some inmates have not requested their

1  information be kept confidential and because there is no evidence that Defendants

2  fail to adequately protect Plaintiffs.  ECF No. 32 at 31.

3       "Irreparable harm is traditionally defined as harm for which there is no

4  adequate legal remedy, such as an award of damages." *Arizona Dream Act Coal.*

5  *v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).  "[I]ntangible injuries, such as

6  damage to recruitment efforts and goodwill, qualify as irreparable harm." *Rent-A-*

7  *Car, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th

8  Cir. 1991).  Caselaw and social science paint a clear picture of the very likely harm

9  Plaintiffs will face if the requested information is disclosed.  *See, e.g.*, *Powell v.*

10  *Schriver*, 175 F.3d 107 (2d Cir. 1999) (remanding transgender prisoner's claim for

11  Eighth Amendment violations after finding "it was obvious" that the prisoner's

12  transgender status placed her in harm's way); *Edmo v. Corizon, Inc.*, 935 F.3d 757

13  (9th Cir. 2019) (applying the "dictates of the Eighth Amendment" to transgender

14  health care, finding the denial of gender affirming surgery violated the Eighth

15  Amendment); *Tay v. Dennison*, 457 F. Supp. 3d 657 (S.D. Ill. 2020) (finding the

16  irreparable harm a transgender prisoner was likely to face was "far from a mere

17  possibility" given her history of sexual assault, harassment, and abuse while

18  incarcerated); *see id*. at 687 (collecting cases); ECF Nos. 9 at 12-13; 10 at 7.

19  Consequently, Court finds Plaintiffs will suffer irreparable injury absent a

20  preliminary injunction.

1

    C.    **Public Interest**

2        Plaintiffs assert there is no public interest that would be injured by the

3    issuance of a preliminary injunction.  ECF No. 7 at 27.  Plaintiffs also emphasize

4    that public interest would actually be served by preventing the disclosure because

5    it furthers the goal of prison safety.  *Id.*  Defendants argue holding an agency liable

6    for constitutional violations following its good-faith response under the PRA is not

7    in the public's interest.  ECF No. 32 at 31.

8        In determining whether to issue a preliminary injunction, courts must

9    balance the competing interests.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d

10   1127, 1138 (9th Cir. 2011).  Here, the competing interests are Plaintiffs' desire to

11   keep confidential certain private information in order to protect their safety, and

12   also the need for safety in the prison systems more broadly, and Defendants'

13   interest in statutory compliance and the need for governmental transparency.

14   Notably, Defendants do not argue there is a public interest in the information

15   contained in the disclosures at issue; instead, they argue, without explanation,

16   withholding the information would not be in the best interest of the public.  ECF

17   No. 32 at 31.

18       Congress contemplated public safety when it enacted the Prison Rape

19   Elimination Act ("PREA") by explicitly finding "[p]rison rape endangers the

20   public safety by making brutalized inmates more likely to commit crimes when

they are released." 34 U.S.C. § 30301(8).  Congress additionally found "the failure of State officials to adopt policies and procedures that reduce the incidence of prison rape" compromised the effectiveness and efficiency of government-funded prison programs.  34 U.S.C. § 30301(14).  Further, and of notable consequence to this case, Congress incorporated *Farmer v. Brennan* into the PREA, referencing the "high incidence of sexual assault within prisons [that] involves actual and potential violations of the United States Constitution."  34 U.S.C. § 30301(13). Finally, among the stated purposes of the act are to "make the prevention of prison rape a top priority in each prison system," to "increase the accountability of prison officials who fail to detect, prevent, reduce, and punish prison rape," and to "protect the Eighth Amendment rights of Federal, State, and local prisoners."  34 U.S.C. §§ 30302(2), (6), (7).

Plaintiffs' interests align with the congressionally stated purposes and findings.  It is indisputable Plaintiffs' transgender status places them at increased risk of the precise public safety concerns contemplated by the PREA.  Defendants have failed to establish how their interests outweigh Plaintiffs'.  Thus, Plaintiffs have established their interests in personal and public safety outweigh Defendants' interests.

### D.    Balance of the Equities

Plaintiffs assert the balance of equities tips sharply in their favor,

particularly because the Ninth Circuit's sliding scale analysis requires Plaintiff to demonstrate only serious questions going to the merits.  ECF No. 7 at 27.  The Supreme Court has recognized that courts must "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987).  Courts have found the maintenance of the "status quo" relevant to the balance of the equities, however, it is not the only consideration.  *See Flex-Plan Servs., Inc. v. Evolution1, Inc.*, No. C13-1986-JCC, 2013 WL 12092543, at *7 (W.D. Wash. Dec. 31, 2013); *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963) ("We are not to be understood as stating that the [status quo] principles are hard and fast rules, to be rigidly applied to every case regardless of its peculiar facts.").

Here, Plaintiffs have provided ample evidence of the harm they will suffer should Defendants make the proposed disclosures.  ECF Nos. 7 at 24-26; 49 at 18-19.  Additionally, while Plaintiffs maintain that public interest is served by preventing the disclosure, any interest the public has in the disclosures is substantially outweighed by the harm Plaintiffs face.  ECF Nos. 7 at 26-27; 49 at 18-19.  Defendants, on the other hand, have merely stated public interest is not served by holding Defendants liable for constitutional violations for their good-faith responses to PRA requests.  ECF No. 32 at 31.  They have not proffered any

1   reasons as to how this preliminary injunction would harm their interests.

2   Therefore, the Court finds the balance of the equities sharply tips in Plaintiffs'

3   favor.  Maintaining the status quo is warranted due to the private nature of the

4   records and the threat of harm should they be released, as well as the apparent lack

5   of prejudice to Defendants.

6                    **E.    Prison Litigation Reform Act**

7         Defendants argue Plaintiffs' requested relief does not comply with the

8   Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626, because it is not

9   narrowly drawn or the least intrusive means necessary to correct the harm.  ECF

10  No. 32 at 32.  Plaintiffs argue limiting the preliminary injunction will not address

11  the threat of irreparable harm posed by ongoing records requests.  ECF No. 49 at

12  19-20.  Plaintiffs further argue Defendants should not be granted discretion at this

13  time to identify and redact information prior to disclosing records.  *Id*.

14        The PLRA authorizes preliminary injunctive relief that is narrowly drawn,

15  extends no further than necessary to correct the harm, and is the least intrusive

16  means necessary.  18 U.S.C. § 3626(a)(1)-(2).  Those requirements are known as

17  the "need-narrowness-intrusiveness" requirements.  *See Armstrong v.*

18  *Schwarzenegger*, 622 F.3d 1058, 1070 (9th Cir. 2010).  Courts must make need-

19  narrowness-intrusiveness findings "sufficient to allow a clear understanding of the

20  ruling." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 783 (9th Cir. 2019).  However, the

Ninth Circuit has never required such findings to be so specific as to require a provision-by-provision explanation; rather, "overall statements by the district court that the need-narrowness-intrusiveness standard has been met" are sufficient. *Armstrong*, 622 F.3d at 1070-71. "What is important, and what the PLRA requires, is a finding that the set of reforms being ordered—the 'relief'—corrects the violations of prisoners' rights with the minimal impact possible on defendants' discretion over their policies and procedures." *Id.* at 1071.

Defendants argue the proposed injunction is not narrowly drawn or the least intrusive means because it prohibits Defendants from disclosing any records responsive to the requests at issue, particularly where the request identifies an individual by name. ECF No. 32 at 32. They further argue Plaintiffs have failed to show how the requests for records pertaining to specific individuals, or individuals who do not wish to keep confidential their "gender identity," implicates a privacy concern. *Id*.

The Court disagrees. The documents Defendants have identified as responsive may include references, directly or indirectly, to Plaintiffs' transgender status. ECF No. 7 at 13. Taken together, the information contained in the documents could be pieced together to derive Plaintiffs' identities and locations, placing them at greater risk of harm. Additionally, Defendants' contention that inmates who choose to disclose their transgender status within the prison system

1    are not entitled to keep that same information confidential from the general public

2    is unpersuasive. A person's reasons for disclosing their transgender status may

3    vary depending on the circumstances, particularly in the prison system where a

4    person's transgender status places them at increased risk of harm. *See, e.g.*, ECF

5    Nos. 13, 14. Notably, Defendants' own policies clearly state an individual's

6    transgender status will be kept confidential and disclosed only on a need-to-know

7    basis. ECF No. 7 at 7. Defendants have not proffered any reason why the general

8    public would need to know such information.

9        A preliminary injunction enjoining Defendants from releasing documents

10   that contain information related to, or referring to, individuals' transgender status,

11   sexual history, genital anatomy, and other related information is narrowly drawn

12   and no more intrusive than necessary under the circumstances. Defendants do not

13   use a system of tracking purely aggregate numerical data on transgender

14   individuals. ECF No. 32 at 5. When such information is requested, as is the case

15   here, Defendants release a variety of documents from which requestors can derive

16   the information they seek. *Id*. The information contained in those documents may

17   also include highly confidential information, the release of which would put

18   Plaintiffs at an increased risk of harm. ECF No. 7 at 13.

19       Defendants argue the proposed injunction will prohibit them from releasing

20   any responsive documents. ECF No. 32 at 32. However, a preliminary injunction

ORDER GRANTING PRELIMINARY INJUNCTION ~ 30

prohibiting Defendants from releasing confidential information related to an individual's transgender status is not a blanket ban on the release of any documents.  Rather, it will require Defendants to keep confidential any information relating to a person's transgender status and any information pertaining thereto, just as Defendants' own policies currently require.

Defendants urge the Court to narrowly tailor the preliminary injunction to address each specific record request and provide detailed instruction regarding which records Defendants are enjoined from producing and the basis for the Court's decision.  ECF No. 32 at 32.  As previously discussed, the PLRA does not require courts to make findings on a paragraph-by-paragraph or line-by-line basis. *Armstrong*, 622 F.3d at 1070.  This is because prospective relief in the context of prisons is necessarily aggregate in nature due to the complex nature of prison systems' policies and procedures and because courts often need to address multiple areas of prison administration. *Id.* at 1070-71.

Limiting the injunction as Defendants request is not only impractical but would also fail to address the ongoing threats Plaintiffs face.  Defendants continue to receive records requests that relate to transgender individuals.  Neither Defendants nor the Court can anticipate what specific information will be requested in the future and given Defendants' practices of divulging numerous documents pursuant to PRA requests, an injunction like the one Defendants

propose would open the door to persistent litigation of issues like those presently

before the Court.

Defendants do not argue the proposed injunction would adversely affect or

burden their internal administrative functions. Thus, under the circumstances and

at the preliminary injunctive stage, the Court finds the requested injunctive relief is

narrowly drawn, extends no further than necessary, and is the least intrusive means

necessary to address the harm.

## II.    Preliminary Injunctive Relief—PRA Claims

The Washington Public Records Act ("PRA") provides injunctive relief for

certain public records that fall within the statute's listed exemptions. *Ameriquest*

*Mortg. Co. v. Off. of Att'y Gen. of Washington*, 177 Wash. 2d 467, 486 (2013). To

obtain preliminary injunctive relief under the PRA, the moving party must show a

likelihood that an exemption applies, and that the disclosure would clearly not be

in the public interest and would substantially and irreparably damage the party.

*Seiu Healthcare 775NW v. State, Dep't of Soc. & Health Servs.*, 193 Wash. App.

377, 393 (2016) (citing *Ameriquest Mortg. Co.*, 177 Wash. 2d at 487). Only after a

court has determined an exemption likely applies does it determine whether

injunctive relief is appropriate. *Id*. at 392.

### A.    Likelihood That an Exemption Applies

One function of the PRA exemptions is to "exempt from public inspection

those categories of public records most capable of causing substantial damage to the privacy rights of citizens." *Ameriquest Mortg. Co.*, 177 Wash. 2d at 486 (citation omitted).  The exemptions should be narrowly construed to facilitate governmental transparency. *Id*. at 487.

### i.   *"Other statute" Exemption*

Plaintiffs argue the proposed disclosures are exempt under the "other statutes" provision of the PRA because that provision incorporates constitutional mandates. ECF No. 7 at 29.  Defendants maintain the proposed disclosures do not violate either federal or state constitutional law.  ECF No. 32 at 34.

The United States Constitution and the Washington State Constitution are incorporated in the PRA's "other statute" exemption. *See Yakima v. Yakima Herald-Republic*, 170 Wn. 2d 775, 808 (2011); *Freedom Found. v. Gregoire*, 178 Wn. 2d 686, 695 (2013).  Having already found Plaintiffs are likely to succeed on their Eighth and Fourteenth Amendment claims, as well as their Article I, Section 7 claim, the Court finds the "other statutes" exemption of the PRA likely applies.

### ii.   *Specific Intelligence Exemption*

Plaintiffs argue the disclosures are exempt as specific intelligence information gathered by a law enforcement or penology agency. ECF No. 7 at 29-30.  Defendants argue the purpose of that exemption is to protect the integrity of law enforcement investigations and the disclosures at issue are not law

1    enforcement investigations.  ECF No. 32 at 34-35.

2         RCW 42.56.240(1) exempts records from disclosure that constitute

3    "[s]pecific intelligence information and specific investigative records compiled by

4    investigative, law enforcement, and penology agencies, . . . the nondisclosure of

5    which is essential to effective law enforcement or for the protection of any

6    person's right to privacy[.]"  RCW 42.56.240(1).  Records are "specific

7    investigative records" if they were "compiled as a result of a specific investigation

8    focusing with special intensity upon a particular party."  *Koenig v. Thurston Cty.*,

9    175 Wash. 2d 837, 843 (2012), *as amended* (Dec. 18, 2012) (citation omitted).

10   "The investigation must be one designed to ferret out criminal activity or to shed

11   light on some other allegation of malfeasance."  *Id*.

12        Here, Plaintiffs argue the disclosures were (1) compiled by DOC, a

13   penological institution, (2) to gather specific information about Plaintiffs, (3) for

14   the purpose of evaluating security and housing classifications, as well as general

15   prison safety.  ECF No. 7 at 30.  Thus, the disclosures constitute specific

16   investigative records.  *Id*.  Defendants concede they gather specific information

17   regarding individuals' transgender status but argue the information is not an

18   investigation as contemplated by the statute nor is the information used to

19   determine criminality.  ECF No. 32 at 35-36.  More precisely, Defendants interpret

20   the statute's "investigation" as something that is "designed to ferret out criminal

activity or to shed light on some other allegation of malfeasance."  ECF No. 32 at

35 (citing *Koenig v. Thurston Cnty.*, 175 Wash. 2d 837, 843 (2012) (citation

omitted)).

Washington courts have interpreted the "some other allegation of

malfeasance" to include an entity's internal investigations into wrongdoing.  *See,*

*e.g.*, *City of Fife v. Hicks*, 186 Wash. App. 122, 133-34 (2015) (collecting cases).

Many such cases involve police departments investigating allegations of police

misconduct.  *See id*.  In finding police department internal investigation records

exempt, the Washington Supreme Court has held "[t]he main purpose of the

internal investigation is to reach an internal disciplinary remedy for proved

misconduct," which is essential to effective law enforcement.  *Sargent v. Seattle*

*Police Dep't*, 179 Wash. 2d 376, 393-94 (2013).  Similarly, investigative records

into prison inmate misconduct have also been held exempt under the PRA.  *See*

*Haines-Marchel v. State, Dep't of Corr.*, 183 Wash. App. 655 (2014) (finding

internal reports detailing confidential informants' accounts of another inmate's

criminal activity within the prison constituted specific intelligence gathered for the

purposes of effective law enforcement).

Here, Defendants acknowledge they collect specific information focused on

individuals who identify as transgender for the purpose of evaluating PREA Risk

Assessments.  ECF No. 32 at 35-36.  The issue is whether such information is

1    gathered to "shed light on some other allegation of malfeasance." *Koenig*, 175

2    Wash. 2d at 843.  Based on Washington precedent and the stated purposes of the

3    PREA (*see* 34 U.S.C. § 30302), it could certainly be argued, as Plaintiffs do, that

4    Defendants gather information on this particular group of Plaintiffs for the

5    purposes of effective law enforcement, namely, to enforce and comply with the

6    PREA.  Therefore, the Court finds the "investigative records for effective law

7    enforcement" exemption likely applies.

8                            *iii.  Health Care Records Exemption*

9            Plaintiffs contend the disclosures are exempt as health care records.  ECF

10   No. 7 at 31.  Defendants do not specifically address the argument but do state any

11   records contained in an individual's medical file would be withheld in their

12   entirety pursuant to RCW 70.02.  ECF No. 32 at 14-15.  Defendants also indicate

13   any information relating to an individual's medical or mental health, diagnosis, or

14   treatment would be redacted from the responsive documents.  *Id*.

15          The PRA exempts certain health care information from disclosure.  RCW

16   42.56.360.  Health care disclosures are evaluated under Chapter 70.02, which is

17   incorporated into the PRA.  *Id*.  Under Chapter 70.02, "health care information" is

18   defined as "any information, whether oral or recorded in any form or medium, that

19   identifies or can readily be associated with the identity of a patient and directly

20   relates to the patient's health care."  RCW 70.02.020(17).  Plaintiffs do not allege

1    Defendants will disclose Plaintiffs' entire medical files but instead argue the

2    proposed disclosures contain information relating to Plaintiffs' transgender status,

3    which is a health care concern itself.  ECF No. 7 at 33.  The Court has already

4    determined that the disclosures may contain information related to Plaintiffs'

5    transgender status and could be pieced together to reveal Plaintiffs' identities.

6    Thus, it follows the records may contain information "that identifies or can readily

7    be associated with" Plaintiffs' identities and "relates to the [Plaintiffs'] health

8    care."  Consequently, the Court finds there is a likelihood the disclosures are

9    exempt under the PRA.

10              **B.    Public Interest and Substantial and Irreparable Damage**

11         As discussed, Plaintiffs have demonstrated the disclosures do not serve the

12   public's interest; instead, nondisclosure better serves public interest as it protects

13   Plaintiffs' health and wellbeing in furtherance of prison safety.  *See also* ECF Nos.

14   7 at 24-27; 49 at 18-19.  In any event, Plaintiffs maintain any interest the public

15   may have in the disclosures is outweighed by Plaintiffs' own interest in their health

16   and safety.  Finally, Plaintiffs have demonstrated they face very real threats of

17   substantial and irreparable harm should the disclosures be released.  Therefore, the

18   Court finds Plaintiffs have demonstrated the disclosures do not serve the public

19   interest and that they will likely face substantial and irreparable injury if the

20   disclosures are released.

ORDER GRANTING PRELIMINARY INJUNCTION ~ 37

Finding all the elements have been met for purposes of this motion, the Court finds the issuance of a preliminary injunction appropriate. Additionally, the Court finds, under the circumstances, the preliminary injunction is narrowly drawn, extends no further than necessary, and is the least intrusive means necessary to address the harm.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion for Preliminary Injunction (ECF No. 7) is **GRANTED**.

2. Plaintiffs (and the putative class of similarly situated persons) have demonstrated a privacy interest that will be irreparably injured if confidential records related to their physical and mental health are released to the public. Defendants are **preliminarily enjoined** from releasing any records (including names and prisoner identification numbers) concerning or that identify the gender identity, transgender status (including non-binary, intersex, and gender non-conforming people), sexual history, sexual orientation, sexual victimization, genital anatomy, mental and physical health, of the proposed class members (current and past prisoners), including any records concerning transfer requests, discipline, PREA investigations and allegations and reassignment surgery.

1    3.  Pursuant to Federal Rule of Civil Procedure 65(c), no bond is required.

2    The District Court Executive is directed to enter this Order and furnish

3  copies to counsel.

4    DATED May 17, 2021.



5
6                                    THOMAS O. RICE
                                United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

ORDER GRANTING PRELIMINARY INJUNCTION ~ 39