1  Joe Shaeffer, WSBA #33273
2  MacDonald Hoague & Bayless
   On behalf of The American Civil Liberties
3  Union of Washington Foundation
   705 Second Avenue, Suite 1500
4  Seattle, WA 98104-1745
   206-622-1604
5

6  Katherine M. Forster, CA Bar #217609
   Munger Tolles & Olson LLP
7  350 South Grand Avenue, 50th Floor
   Los Angeles, CA 90071
8  (213) 683-9538

9                                          Honorable Thomas O. Rice

10

11            UNITED STATES DISTRICT COURT
       EASTERN DISTRICT OF WASHINGTON AT RICHLAND
12

13  JOHN DOE 1; JOHN DOE 2; JANE DOE        NO. 4:21-cv-05059-TOR
14  1; JANE DOE 2; JANE DOE 3; and all
    persons similarly situated,
15
                    Plaintiffs,            **PLAINTIFFS' UNOPPOSED
16                                          MOTION FOR APPROVAL
            v.                              OF SETTLEMENT AND
17                                          CONSENT DECREE**
    WASHINGTON STATE DEPARTMENT
18  OF CORRECTIONS and CHERYL
    STRANGE, Secretary of The Department
19  of Corrections, in her official capacity,
20
                    Defendants.
21

22

23

## I.   <u>INTRODUCTION</u>

Plaintiffs bring this motion seeking approval of the class action Settlement Agreement and entry of a consent decree consistent with the Agreement.  More specifically, Plaintiffs request this Court to set a final approval hearing without directing further class notice; to approve the Parties' proposed Settlement Agreement and issue a consent decree incorporating the Agreement; to award class counsel's agreed fees and costs; and to close this case administratively while retaining jurisdiction to enforce the consent decree. In the alternative, Plaintiffs request this Court to grant preliminary approval of the proposed Settlement Agreement, direct notice to the class as proposed, and issue a scheduling order for final approval. Plaintiffs also request that the Court implement procedures reasonably designed to protect the identities of class members in connection with the settlement approval process. Defendants do not oppose this motion.

## II.   <u>FACTUAL BACKGROUND</u>

Plaintiffs commenced this action on April 7, 2021, to protect currently and formerly incarcerated transgender people from Defendants' public release of their personal and private information, including their transgender status, medical and mental health information, and history of sexual victimization, in response to requests under the Washington Public Records Acts, RCW 42.56. ECF No. 1. Plaintiffs contend that disclosure would violate their rights. Plaintiffs sought a Temporary Restraining Order ("TRO") (ECF Nos. 6, 26, 47) and a Preliminary Injunction ("PI") (ECF No. 7) to enjoin Defendants from releasing such information during the pendency of this litigation, which this court granted over

Defendants' objections. ECF Nos. 22, 39, 61, 70. In so doing, the Court concluded that Plaintiffs were likely to succeed on their claims. ECF No. 70 at 13. This Court's PI prohibited Defendants:

> from releasing any records (including names and prisoner identification numbers) concerning or that identify the gender identity, transgender status (including non-binary, intersex, and gender non-conforming people), sexual history, sexual orientation, sexual victimization, genital anatomy, mental and physical health, of the proposed class members . . . .

ECF No. 70 at 38. In response to a motion by Defendants, the Court later clarified the PI to permit certain non-public disclosures. ECF No. 98 at 4.

In 2022, the Washington Legislature passed, and Governor Inslee signed into law, Engrossed Substitute House Bill 1956 (ESHB 1956). Codified at RCW 42.56.475, this law took effect March 31, 2022, and provides an exemption from disclosure of certain information under the Public Records Act that is "created or maintained by the department of corrections," including information covered by the Court's PI. Both Plaintiffs' counsel and Defendants assisted in the drafting of RCW 42.56.475, along with other community stakeholders representing the news media, government transparency advocates, and others. Frenchman Decl. ¶ 12. RCW 42.56.475 provides for the protection of, among other things, certain "information and records created or maintained pursuant to the federal prison rape elimination act, 34 U.S.C. Sec. 30301 et seq., and its regulations" and "[h]ealth information in records other than an incarcerated individual's medical, mental health, or dental files," including a person's "transgender, intersex, nonbinary, or gender nonconforming status." RCW 42.56.475. Defendants must apply the Public

Records Act exemptions of RCW 42.56.475. *See* WAC 137-08-130.

Between the filing of this matter and the present, the Parties engaged in extensive discovery, including production of more than 44,000 pages of records. Frenchman Decl. ¶ 13. Upon review of this discovery, Plaintiffs filed a motion to show cause on February 7, 2023, alleging that Defendants violated this Court's orders, and sought relief including quality assurance review of records prior to release and training for Defendants' staff. ECF No. 123. Defendants opposed that Motion. ECF No. 138. On February 13, 2023, Defendants and Plaintiffs' counsel entered settlement negotiations over email, telephone, and video conference. Frenchman Decl. ¶ 14. The Parties agreed to a term sheet on March 15. *Id*. That same day, Plaintiffs' counsel filed a stipulated motion notifying the Court of an agreement in principle between the Parties and requesting a stay of all court deadlines. ECF No. 142. The Court granted that motion on March 16, ECF No. 143, and extended the stay at the request of the Parties until May 31. ECF No. 145. Defendants and Plaintiffs' counsel continued negotiations, reaching a formal Settlement Agreement on May 10. Frenchman Decl. ¶ 14.

### III.   OVERVIEW OF THE SETTLEMENT AGREEMENT

This "Overview" section summarizes key terms of the proposed Settlement Agreement and its supporting exhibits. Frenchman Decl. ¶ 14; Exh. A. The "Argument" section which follows explains why the Court should approve the Settlement Agreement, award counsel's agreed fees and costs, and implement the proposed hearing plan.

#### A.   Sections I and II: Introduction and Approval Process

Section I provides that the Settlement Agreement would resolve the injunctive claims raised in this lawsuit. The parties stipulate, and Defendants agree not to contest, that an order approving and adopting the Agreement would comply in all respects with the requirements for prospective relief under the Prison Litigation Reform Act, 18 U.S.C. § 3626(a) ("PLRA"). Section II of the Agreement states that Defendants will not oppose this motion to approve the Agreement and that the Parties will develop a plan to provide notice to class members if so ordered by the Court. For reasons discussed below, and as this Court has already held, notice is permissive for this injunctive class. *See* ECF No. 88 at 2.

## B.    Section III: Substantive Terms

Section III of the Agreement covers the substantive terms, which include a Permanent Injunction for the duration of the Agreement period, training requirements for Defendants, monitoring by Plaintiffs' counsel of productions enjoined by the Permanent Injunction, a dispute resolution process, and payment of a portion of Plaintiffs' attorneys' fees and costs.

For purposes of facilitating this Agreement, the Parties agree in Section III.10 that the Court may enter a Permanent Injunction that will expire after one year unless extended by this Court's order. The proposed Injunction closely tailors this Court's enjoinder to the requirements of RCW 42.56.475, which both Parties agree would, if correctly interpreted and applied by Defendants, protect the Plaintiff class. Defendants will continue to be permitted to make certain non-public disclosures. Further, the Parties agree that Defendants should not be enjoined from

1  publicly disclosing records that have been reviewed and approved for release by

2  Plaintiffs' counsel or this Court.

3  In Section III.11, Defendants agree to adopt and implement Training

4  Materials that have been written with participation by Plaintiffs' counsel to ensure

5  that public records staff interpret and apply RCW 42.56.475 correctly. These

6  Training Materials include DOC Newsbrief documents, which summarize the

7  requirements of RCW 42.56.475 for Defendants' public records staff and a training

8  presentation with more detailed substantive guidance. As discussed below, these

9  materials will be used to resolve disputes concerning the redaction of records

10  during the compliance monitoring period.

11  Section III.12 provides that Defendants must notify Plaintiffs' counsel

12  within five days of receiving notice of any other court action regarding RCW

13  42.56.475. Defendants must also notify any other court overseeing an action

14  regarding RCW 42.56.475 of the Agreement and relevant orders from this Court.

15  Section III.13 states that Defendants will send letters to all public records

16  requestors with requests known to be subject to this Court's PI to confirm whether

17  the requestors wish for their requests to remain open.

18  Section III.14 establishes a process by which Defendants will notify

19  Plaintiffs' counsel monthly of current public records requests, the identities of

20  class members, and a list of all outstanding request responses enjoined by this

21  Court. The review process permits Plaintiffs' counsel to review 27 past or pending

22  productions selected by Plaintiffs' counsel to ensure that Defendants are

23  withholding records consistent with the training materials and RCW 42.56.475.

The Parties agree to meet and confer in good faith to resolve any disagreement over proposed redactions or withholdings. In the unlikely event that the Parties cannot agree, the Parties request that this Court perform an *in camera* review to determine whether Defendants applied RCW 42.56.475 to the records at issue in a manner consistent with the training materials. The Parties agree that records approved for release by both Parties or this Court may be disclosed.

Section III.15 provides that the Agreement and Permanent Injunction shall automatically expire one year from the date of this Court's final order of approval, unless the Court finds that Defendants have failed to apply redactions and withholdings in a manner substantially consistent with the Training Materials or RCW 42.56.475, such that Plaintiffs would have a high likelihood of prevailing on their Eighth or Fourteenth Amendment claims if the Permanent Injunction were dissolved, or that Defendants have failed to comply with other elements of the Agreement, including requirements to train staff or comply with the record review and disclosure process. An extension may include continuing the Injunction, an additional period of monitoring by Plaintiffs' counsel as described in Section III.14 of this Agreement, and other relief as the Court determines appropriate. Plaintiffs may seek enforcement should Defendants violate the terms of the Agreement.

Finally, the Parties agreed in Section III.16 that Defendants shall pay Plaintiffs' counsel $650,000 for a portion of their attorneys' fees and costs for this litigation, including future fees incurred by Plaintiffs' counsel in monitoring Defendants' compliance during the initial one-year term of this Agreement. Defendants may be required to pay additional fees for successful enforcement of

the Agreement or for monitoring Defendants' compliance after the initial one-year term of the Agreement. No fees or costs will be borne by any class members.

## IV.   ARGUMENT

The sections below explain why the Court should approve the Settlement Agreement and issue a consent decree incorporating the Agreement, award class counsel's agreed fees and costs, and implement the proposed hearing plan.

### A.   The Court Should Approve the Settlement Agreement and Issue a Consent Decree.

Plaintiffs request that the Court approve the Settlement Agreement pursuant to Federal Rule of Civil Procedure 23(e) and issue a consent decree incorporating the approved Agreement. Rule 23(e) requires the district court to determine whether a proposed settlement, "taken as a whole," is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). To assess the fairness of a proposed settlement, courts consider the following *Hanlon* factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* The agreement may not be "the product of fraud or overreaching by, or collusion between, the negotiating parties . . . ." *Id.* at 1027 (quotation and citation omitted).

The proposed consent decree impacts both incarcerated people and people in the community. To the extent the consent decree applies to incarcerated people, the order must satisfy the PLRA's need-narrowness-intrusiveness requirements for prospective relief. *See* 18 U.S.C. § 3626(c). The PLRA provides that courts

> shall not grant or approve any prospective relief [with respect to prison conditions] unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

18 U.S.C. § 3626(a)(1)(A); *see Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1070 (9th Cir. 2010). Courts must make need-narrowness-intrusiveness findings "sufficient to allow a clear understanding of the ruling." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 783 (9th Cir. 2019) (quotation and citation omitted). Although the Ninth Circuit has never required explicit provision-by-provision findings, "overall statements by the district court that the need-narrowness-intrusiveness standard has been met" are sufficient provided there "is a finding that the set of reforms being ordered—the 'relief'—corrects the violations of prisoners' rights with the minimal impact possible on defendants' discretion over their policies and procedures." *Armstrong*, 622 F.3d at 1070-71.

This class action for declaratory and injunctive relief was intended to stop Defendants from improperly releasing certain sensitive and private records about class members. This Settlement Agreement achieves that goal. The Agreement would enjoin Defendants from releasing any such records in response to any pending or future Public Records Act request; require Defendants to implement a

demanding regime of training and practice exercises for staff; and subject

Defendants to extensive compliance monitoring by class counsel for a period of at

least one year. Disputes may be brought to this Court for enforcement, and

Plaintiffs have the opportunity through counsel to extend the injunction and

monitoring upon a showing of Defendants' non-compliance. None of this relief

would have been provided but for this litigation. *Cf. Briseño v. Henderson*, 998

F.3d 1014, 1028 (9th Cir. 2021) ("find[ing] illusory any injunction that does not

obligate the bound party to do anything it was not already doing voluntarily for its

own business reasons") (cleaned up).

Class members will receive this relief at no financial cost; the Settlement is

limited to claims brought in the complaint and class members do not release any

claims for monetary damages. *See Campbell v. Facebook, Inc.*, 951 F.3d 1106,

1113–15, 1124 (9th Cir. 2020) (affirming approval of injunctive-relief-only class

settlement that did not release class members' damages claims). All Parties, one of

which is a governmental participant, support the proposed Agreement, and as this

Court has found, "Plaintiffs' counsel has significant experience litigating class

actions and complex matters." ECF No. 69 at 15. Indeed, the Agreement's

complex mixture of injunction, training, and monitoring is the product of

Plaintiffs' counsel's years of experience negotiating, monitoring, and enforcing

complex class actions against state defendants.

The Settlement proposal follows a contested class certification, ECF No. 69,

and more than two years of hard-fought litigation. The Parties engaged in extensive

discovery involving Defendants' production of more than 44,000 pages of records

and negotiated settlement terms at arm's length for more than two months. Frenchman Decl.  ¶¶ 13, 14. Through litigation and negotiation, the Parties are extremely well informed of the issues. Overall, the Agreement provides Plaintiffs everything sought in their complaint for injunctive relief.

Plaintiffs believe the case for permanent injunctive relief is strong, and that they would prevail at trial. Plaintiffs contend that Defendants have released and would continue to release sensitive and confidential information about currently and formerly incarcerated transgender people, including information that identifies or relates to their transgender status, medical and mental health status or treatment, sexual orientation, and history of sexual victimization. Defendants' failure to protect this information puts class members at risk of physical and sexual violence in correctional settings and the community; disincentivizes people from accessing lifesaving and medically necessary gender affirming medical care; and violates individuals' right to privacy by disclosing this personal information to the public, which can cause grievous harm and put people at risk of harassment, discrimination, and violence. For these reasons and in accord with the Court's PI order, ECF No. 70, there is a high likelihood that Defendants' actions violate the Eighth and Fourteenth Amendments.

However, Plaintiffs' case was also complicated by the enactment of RCW 42.56.475. While Plaintiffs' counsel supported and celebrated the passage of RCW 42.56.475, which expressly requires Defendants to protect the records at issue, this law changed the legal and factual questions underlying this case. Prior to RCW 42.56.475, it was undisputed that Defendants would categorically release records at

issue in this case. Following passage, the case would turn on demonstrating that Defendants would not correctly apply RCW 42.56.475 upon release from this Court's PI—a more fact-intensive and challenging theory to prove.

While Defendants do not agree with Plaintiffs' factual assertions or legal conclusions regarding Plaintiffs' case, for purposes of this motion, Defendants do not oppose approval of the Settlement Agreement and entry of a consent decree incorporating its terms. The Parties also stipulate that a consent decree incorporating the Agreement would comply in all respects with the requirements for prospective relief under the PLRA. *See* 18 U.S.C. § 3626(a).

In conclusion, the relief provided through this Settlement Agreement fully resolves the claims raised in Plaintiffs' complaint in a manner that minimizes any impact on Defendants. Without need for any further injunctive relief, the Settlement Agreement is patently fair, and cannot be considered the result of collusion between the Parties. Pursuing the same or similar relief at trial would needlessly waste government, judicial, and Plaintiff resources. This resolution is a victory for all involved without the delay and costs of further litigation.

### B.     The Court Should Award Class Counsel's Fees and Costs.

Plaintiffs request that the Court award class counsel $650,000 in fees and costs as provided for in the Parties' Settlement Agreement pursuant to Federal Rules of Civil Procedure 23(h) and 54(d) and . "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an

amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citation omitted).

The "lodestar method" is typically used when, as here, "the relief sought— and obtained—is often primarily injunctive in nature and thus not easily monetized, but where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation.*" Id*. The lodestar method calculates attorney fees by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate for the region and for the experience of the lawyer. *See McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009). Although the lodestar rate is "presumptively reasonable," *Cunningham v. Cty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988), the court may move the amount up or down to reflect the *Hanlon* factors, "including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Hanlon*, 150 F.3d at 1029; *see also Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975) (listing twelve factors courts may consider when adjusting the lodestar figure).

The Court must also independently determine that the award is not the result of collusion by considering not only the *Hanlon* factors discussed above, but also the three *Bluetooth* signs of a collusive agreement:

> (1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing arrangement,' under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class.

*Briseño*, 998 F.3d at 1023 (cleaned up).

The PLRA's statutory fee cap does not apply to this matter filed on behalf of both non-incarcerated and incarcerated people because it is impossible to separate counsel's fees for each. *See Hunter v. Cnty. of Sacramento*, No. 2:06-CV-00457-GEB, 2013 WL 5597134, at *10 (E.D. Cal. Oct. 11, 2013); *Young v. Kentucky Dep't of Corr.*, No. 5:11-CV-00396-JMH, 2015 WL 4756529, at *1 (E.D. Ky. Aug. 11, 2015); *Turner v. Wilkinson*, 92 F. Supp. 2d 697, 704 (S.D. Ohio 1999).

Class counsel's fees are $1,415,789.50 and costs are $18,675 for a total amount of $1,434,464.50. *See* Frenchman Decl. ¶ 21; Waxwing Decl. ¶¶ 6, 10; Foster Decl. ¶¶ 9–11; Shaeffer Decl. ¶¶ 4, 5; Clark Decl. ¶¶ 5–7. The proposed award of $650,000 is a **0.45** downward multiplier of class counsel's total fees and costs. This "negative multiplier suggests that the fee request is reasonable." *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 601 (N.D. Cal. 2020). Class counsel's figure omits a substantial amount of time spent by Plaintiffs' counsel, including all DRW costs, all fees of DRW paralegals and law clerks, all fees of DRW attorneys and attorney-supervisors with less than 100 hours, and more than 400 hours of reductions by DRW attorneys including time spent drafting and supporting the passage of RCW 42.56.475, which is essential to the outcome of this matter. Frenchman Decl. ¶¶ 16, 17, 19. Most importantly, the agreed fee award is also intended to compensate Plaintiffs' counsel for unknown future time monitoring Defendants' compliance with the Agreement. Frenchman Decl. ¶ 20.

Class counsel's hours were reasonable in this complex, hard fought case. The Ninth Circuit recognizes that prosecution of a complex case often requires

multiple attorneys for strategizing and coordinating work.  *See, e.g.*, *Davis v. City and Cnty. of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992). And counsel had every incentive to limit their time on this injunctive civil rights case. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (It is a "highly atypical civil rights case where plaintiff's lawyer engages in churning.").

Counsel's hourly rates are also reasonable, which further supports an order awarding the agreed fees. Counsel are entitled to compensation at the prevailing market rate for attorneys of similar skill, experience, and reputation conducting similar work. *Blum v. Stenson*, 465 U.S. 886, at 896 n.11 (1984).  The agreed fee award is in line with other recent awards in the U.S. District Court for the Eastern District of Washington. *See O'Kell v. Haaland*, 2:18-CV-00279-SAB, 2022 WL 19571657, at *3-4 (E.D. Wash. July 8, 2022) (awarding fees of $550/hr and $500/hr and $638,481.50 total); North Sails Group, LLC v. Boards & More, Inc., No. 1:19-CV-03112, 2020 WL 13505055, at *2 (E.D. Wash. June 23, 2020) (awarding an uncontested rate of $680/hr); *U.S. ex rel. Savage v. Wash. Closure Hanford LLC*, No. 2:10-cv-05051, 2019 WL 13169887, at *4-5, *7-8 (E.D. Wash. Aug. 27, 2019) (finding $600/hr "reasonable" and awarding over $1.2 million); *Estate of Moreno v. Corr. Healthcare Comp. Inc.*, No. 4:18-CV-5171, 2019 WL 10733236, at *2 (E.D. Wash. July 1, 2019) (awarding $550/hr).

Should this Court determine that any of Plaintiffs' counsel's fees are beyond the prevailing market rate, an application of *Hanlon* and *Kerr* factors would demonstrate that counsels' fees are reasonable. These factors include:

"…(2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case,…(6) whether the fee is fixed or contingent,… (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70.

This class action was particularly complex, involving sub-classes with claims at the intersection of the Public Records Act, prison administration, transgender care, and the state and federal constitutions. On an emergency timeframe, Plaintiffs successfully raised several theories that, as Defendants argued and this Court determined, were novel. *See, e.g.,* ECF No. 70 at 18, 19. Class counsel prevailed on multiple critical motions and achieved an Agreement that completely resolves the complaint, led to new policies and a new state law, and establishes a period of comprehensive outside oversight for no cost to the class, who retain their right to pursue monetary damages. *See Campbell*, 951 F.3d at 1113–15, 1124. Class counsel were also uniquely positioned for success based on their extensive knowledge of prison administration relating to transgender people, state and federal practice, and longstanding relationships and representation of class members and LGBTQ+ clients. The extensive work on this matter precluded counsel from pursuing other work including work on behalf of people with disabilities who cannot afford legal counsel.

Plaintiffs' counsel are often awarded multipliers for complex civil rights litigation on behalf of prisoners. *See, e.g., Edmo v. Idaho Dep't of Corr.,* 1:17-CV-00151-BLW, 2022 WL 16860011, at *14 (D. Idaho Sept. 30, 2022) (awarding more than $2.5 million and lodestar multipliers for representation of transgender prisoner); *Kelly v. Wengler*, 7 F. Supp. 3d 1069, 1084 (D. Idaho 2014), *aff'd*, 822 F.3d 1085 (9th Cir. 2016) (multiplier was warranted in part because of the fact that "the limited fees available for injunctive and declaratory relief prison lawsuits prevent private attorneys from accepting those cases, as a class"); *Skinner v. Uphoff*, 324 F. Supp. 2d 1278, 1287 (D. Wyo. 2004) (multiplier appropriate where the case settled, avoiding a costly trial; plaintiffs' lawsuit "helped create new policies at the [prison]"; and the lawsuit "vindicated the constitutional rights of a large group of people" while "facing strong resistance and tenacious defense of these claims").

Finally, under the analysis in *Hanlon* and *Bluetooth*, there is no indication of collusion between the Parties. As discussed above, this hard-fought litigation resulted in an exceptional victory for the class without any financial cost to them. First, class counsel's proposed fee award is a substantial downward multiplier of their lodestar rate and is not disproportionate to the significant, but hard-to-quantify injunctive relief for the class. In exchange for this relief, class members are not asked to waive any future claim for monetary damages. Second, although the Parties have agreed to fees, the agreed fee award is less than half of counsel's fees and costs, making the award presumptively reasonable. And there is no settlement award or additional injunctive relief that could have been achieved had

Defendants been permitted to oppose class counsel's fee application. *See Campbell*, 951 F.3d at 1127. The third *Bluetooth* factor—the presence of a kicker clause—is not present and does not apply in injunctive-only settlements such as this. *Id.*

For all these reasons, class counsel's requested fees and costs award is reasonable and should be granted.

### C.    The Court Should Implement the Hearing Plan.

#### 1.    *Notice to the Class Should Not Be Required.*

Plaintiffs request that the Court exercise its discretion to set a final approval hearing based on this Motion, without further notice to the class.

For this class action certified under Federal Rule of Civil Procedure 23(b)(2), ECF No. 69 at 17, the Court "**may** direct appropriate notice to the class." Fed. R. Civ. P. 23(b)(2) (emphasis added). Thus notice and hearing requirements pursuant to Federal Rule of Civil Procedure 23(e) are discretionary here. Concerning notice after certification of a Rule 23(b)(2) class, this Court wrote that class members "are not . . . permitted to opt out . . . [and] notice requirements are permissive." ECF No. 88 at 2 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361–62 (2011)). For these reasons, notice of a proposed settlement of a Rule 23(b)(2) settlement is also permissive. *See*, *e.g.*, *Padilla v. Whitewave Foods Co.*, No. 2:18-CV-09327-SB-JC, 2021 WL 4902398, at *4 (C.D. Cal. May 10, 2021).

Courts have exercised their discretion to not direct notice when, as here, "[p]laintiffs and the class release only those claims they may have for injunctive relief—relief they will receive through the settlement—but not claims for statutory

damages or other monetary awards." *Kline v. Dymatize Enter., LLC,* No. 15-CV-2348-AJB-RBB, 2016 WL 6026330, at *6 (S.D. Cal. Oct. 13, 2016); *see also Padilla* at *4. There are additional prudential reasons to not order notice here, including the interest in protecting the privacy and anonymity of class members and the difficulty in protecting their identities in the event of written or in-person comment directed to the Court.

> 2.     *In The Alternative, the Court Should Preliminarily Approve the Proposed Agreement and Issue a Scheduling Order.*

In the alternative, should this Court wish to follow a two-step approval process, Plaintiffs request that the Court preliminarily approve the proposed Settlement Agreement for the reasons stated above and issue a scheduling order addressing notice to the class and deadlines related to the final approval hearing.

As to notice, Plaintiffs propose that the Court order the Parties to develop and for Defendants to post informational posters in all DOC facilities and community supervision offices that direct individuals to detailed notice to be posted by Defendants in all DOC facility libraries and on websites established by class counsel Disability Rights Washington and ACLU of Washington. *See* ECF No. 88 at 3.

Plaintiffs also request that the Court set deadlines for completing the notice process and filing a motion for final approval of the Settlement Agreement, as well as setting a final approval hearing date.

> 3.     *The Court Should Implement Privacy Protections for Class Members in Connection with the Final Approval Hearing.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14

       While class members with objections should be permitted to write or address the Court with their objections, Plaintiffs request that the Court establish procedures reasonably designed to protect their identities. Due to the intensely personal nature of Class members' claims, Plaintiffs respectfully request that only the Parties, Class members, and their representatives be permitted to address the Court at the hearing. Class members with objections who wish to appear in person should notify the Court and the Parties of their desire to be heard, along with a statement of their objection. Plaintiffs request that the Court require that such notice be given so that the Court and the Parties can consider and address specific objections at the hearing. Plaintiffs also request that class members with objections who wish to appear in person be given the opportunity to address the Court without providing their name. Finally, Plaintiffs request that the Court direct the Clerk to seal any written statements submitted to the Court that identify a class member and limit access to such materials to counsel in this case.

15
16

## V.    CONCLUSION

17

Plaintiffs respectfully request that the Court:

18
19

(1)  enter the attached proposed order setting a final settlement approval hearing and process and, after that hearing,

20
21
22

(2)  enter the attached proposed order approving and incorporating the Parties' proposed Settlement Agreement, awarding fees and costs, and administratively closing the case.

23

Presented this 31st day of May, 2023, by:

| MacDonald Hoague & Bayless | Munger, Tolles & Olson LLP |
|---|---|
| By: _s/ Joe Shaeffer_<br>Joe Shaeffer, WSBA #33273<br>joe@mhb.com<br>Attorneys for Plaintiffs<br>On behalf of The American Civil<br>Liberties Union of Washington<br>Foundation<br><br>705 Second Avenue, Suite 1500<br>Seattle, WA 98104<br>Tel: 206.622.1604<br>Fax: 206.343.3961 | By: _s/ Katherine M. Forster_<br>Katherine M. Forster, CA Bar #217609<br>_Pro Hac Vice_<br>Katherine.Forster@mto.com<br>Attorneys for Plaintiffs<br><br>350 South Grand Avenue, 50th Floor<br>Los Angeles, CA 90071<br>Tel: 213.683.9538<br>Fax: 213.593.2838 |
| American Civil Liberties Union of<br>Washington Foundation<br><br>By: _s/ Nancy Talner_<br>Nancy Talner, WSBA #11196<br>TALNER@aclu-wa.org<br>By: _s/ Jazmyn Clark_<br>Jazmyn Clark, WSBA #48224<br><br>Attorneys for Plaintiffs<br>P.O. Box 2728<br>Seattle, WA 98111<br>Tel: 206.624.2184 | Disability Rights Washington<br><br><br>By: _s/ Ethan D. Frenchman_<br>Ethan D. Frenchman, WSBA #54255<br>ethanf@dr-wa.org<br>By: _s/ Danny Waxwing_<br>Danny Waxwing, WSBA #54225<br>dannyw@dr-wa.org<br>By: _s/ Heather McKimmie_<br>Heather McKimmie, WSBA #36730<br>heatherm@dr-wa.org<br>By: _s/ David Carlson_<br>David Carlson, WSBA #35767<br>davidc@dr-wa.org<br><br>Attorneys for Plaintiffs<br>315 5th Avenue S, Suite 850<br>Seattle, WA 98104<br>Tel: 206.324.1521 |

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on May 31, 2023, I electronically transmitted the foregoing

3

document to the Clerk's Office using the CM/ECF System for filing and

4

transmittal of a Notice of Electronic Filing to the counsel/parties of record for this

5

matter.

6

RESPECTFULLY SUBMITTED this 31st day of May, 2023.

7

8

By: */s/ Mona Rennie*

9

Mona Rennie
Disability Rights Washington

10

11

315 Fifth Avenue South
Suite 850

12

Seattle, WA 98115
Tel: (206) 324-1521

13

monar@dr-wa.org

14

15

16

17

18

19

20

21

22

23