# EXHIBIT A

1   Joe Shaeffer, WSBA #33273
    MacDonald Hoague & Bayless
2   On behalf of The American Civil Liberties
    Union of Washington Foundation
3   705 Second Avenue, Suite 1500
    Seattle, WA 98104-1745
4   206-622-1604

5
    Katherine M. Forster, CA Bar #217609
6   Munger Tolles & Olson LLP
    350 South Grand Avenue, 50th Floor
7   Los Angeles, CA 90071
    (213) 683-9538
8

9                                        Honorable Thomas O. Rice

10

11              UNITED STATES DISTRICT COURT
        EASTERN DISTRICT OF WASHINGTON AT RICHLAND
12

13   JOHN DOE 1; JOHN DOE 2; JANE        NO. 4:21-cv-05059-TOR
     DOE 1; JANE DOE 2; JANE DOE 3; and
14   all persons similarly situated,

15              Plaintiffs,             SETTLEMENT AGREEMENT

16         v.

17   WASHINGTON STATE DEPART-
     MENT OF CORRECTIONS; CHERYL
18   STRANGE, Secretary of The Department
     of Corrections, in her official capacity,
19

20              Defendants.

21

22

23

24

25

26

SETTLEMENT AGREEMENT                          DISABILITY RIGHTS WASHINGTON
NO. 4:21-CV-05059-TOR                          315 5TH AVE S., SUITE 850
                                                SEATTLE, WA 98104
                                                   (206) 324-1521

This Settlement Agreement is between undersigned Plaintiffs JOHN and JANE DOEs, and the provisional class they represent, through counsel KATHERINE M. FORSTER, ETHAN FRENCHMAN, JOE SHAEFFER, and NANCY TALNER, and Defendants Washington State Department of Corrections and Cheryl Strange, in her official capacity as Secretary, by and through their attorneys of record, ROBERT W. FERGUSON, Attorney General, and CANDIE M. DIBBLE and TIM LANG, Assistant Attorneys General.  Plaintiffs and Defendants are collectively referred to herein as the "Parties."

## I.    INTRODUCTION

1.      The purpose of this Settlement Agreement is to resolve claims asserted in Plaintiffs' Complaint for Injunctive Relief, filed in this matter in April of 2021. The Complaint alleged that Defendants intended to release certain records requested pursuant to the Washington Public Records Act, RCW 42.56, in violation of Plaintiffs' rights under the Eighth and Fourteenth Amendments to the United States Constitution; Article 1, Section 7 of the Washington Constitution; and the injunction provisions of the Washington Public Records Act.  In their Answer, Defendants denied Plaintiffs' claims and alleged that no Public Records Act exemption existed that would authorize the Department of Corrections to withhold the requested information.

2.      On May 17, 2021, the Court entered an Order Granting Motion for Provisional Class Certification (ECF No. 69) and an Order Granting Preliminary Injunction (ECF No. 70).  The preliminary injunction prohibited Defendants "from

releasing any records (including names and prisoner identification numbers) concerning or that identify the gender identity, transgender status (including non-binary, intersex, and gender non-conforming people), sexual history, sexual orientation, sexual victimization, genital anatomy, mental and physical health, of the proposed class members…." ECF No. 70 at 38. The Court later entered an Order Granting Defendants' Motion for Clarification (ECF No. 98), instructing that:

> Defendants are not enjoined from sharing such records in a non-public manner consistent with federal and state law and penological necessity. Defendants may share this information with other correctional and law enforcement agencies, outside health care treatment providers for the purposes of treatment, the Office of Corrections Ombuds, and the state protection and advocacy system. Defendants may also release this information in defensive litigation where a plaintiff has already disclosed the exact same information in open court, but in all other circumstances information or records covered by this Order must be distributed with a protective order and filed in court under seal.

ECF No. 98 at 4.

3.    In 2022, the Washington Legislature passed, and Governor Inslee signed into law, Engrossed Substitute House Bill 1956 (ESHB 1956). Codified at RCW 42.56.475, ESHB 1956 took effect March 31, 2022, and provides an exemption from disclosure of certain information under the Public Records Act, including information covered by the Court's Preliminary Injunction.

4.    The Parties agree that this Settlement Agreement embodies a compromise and settlement of all claims that were raised in this lawsuit, and that nothing herein shall be deemed an admission of any wrongdoing by or liability on the part of the Defendants. Plaintiffs further understand and agree that by entering into this

Settlement Agreement, they are stipulating to the dismissal of all claims asserted in their Complaint with prejudice upon completion of the term of settlement as provided herein.  Upon such dismissal, Plaintiffs agree and covenant not to sue the State of Washington or its agencies, employees and officials over the claims concluded by this Settlement Agreement.

5.      The Parties stipulate that the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, including to enforce the terms of this Settlement Agreement, and that venue is proper in this district pursuant to 28 U.S.C. § 1391.  This Settlement Agreement will take effect upon the Court's entry of an Order approving and adopting the Agreement (the "Effective Date").

6.      The Parties stipulate that the prospective relief provided in this Agreement complies with the requirements for prospective relief under the Prison Litigation Reform Act, 18 U.S.C. § 3626(a).  The Parties stipulate that the prospective relief in this Agreement is narrowly tailored, extends no further than would be necessary to correct the violations of federal rights as set forth by Plaintiffs in their Complaint, is the least intrusive means necessary to correct the violations asserted in Plaintiffs' Complaint, and will not have an adverse impact on public safety or the operation of a criminal justice system.  Defendants agree not to contest that the entry of an order adopting this Agreement or entering a permanent injunction, as described below, complies with the requirements for prospective relief under 18 U.S.C. § 3626(a).

SETTLEMENT AGREEMENT - 3
NO. 4:21-CV-05059-TOR

## II. APPROVAL PROCESS

7.    **Motion for Approval:** Plaintiffs shall move the Court within 30 days of execution of this Settlement Agreement for an Order granting approval of the Agreement.  Defendants will submit a statement of non-opposition.

8.    **Notice:** Should the Court deem it appropriate to provide Notice of the settlement to the Class prior to granting final approval of the settlement, the Parties shall negotiate, draft, and post notice to the Class.

9.    **Final Approval of the Agreement:** If the Court orders notice to the Class with a final approval hearing to follow, Plaintiffs will move for final approval of the Agreement, and Defendants will submit a statement of non-opposition to final approval.

## III. SUBSTANTIVE TERMS

10.    **Injunction:** The Parties agree that, solely for the purpose of facilitating this Settlement Agreement and ensuring Plaintiffs' information is protected as the Parties have agreed, the Court may enter a permanent injunction (Injunction) in the form proposed as Exhibit 1.  The Injunction shall remain in effect only for the duration of this Settlement, as defined in Paragraph No. 15 below, and shall automatically terminate thereafter with the dismissal of this lawsuit, unless Plaintiffs have successfully moved the Court for an order extending the Settlement duration.

11.    **Training:** Defendants agree to adopt and implement the training materials attached hereto as Exhibit 2 (Training Materials), which Plaintiffs agree will be used to instruct public records staff on the proper interpretation and application

of RCW 42.56.475.  Defendants further agree to train all staff responsible for reviewing and redacting records under the Public Records Act within 45 days of the date the Parties sign this Settlement Agreement.

12.    **Notice to Plaintiffs' Counsel and Other Courts:** Within 5 days of Defendants receiving notice of any other court action regarding RCW 42.56.475, Defendants shall notify Plaintiffs' counsel of the action.  Defendants shall also, in responsive pleadings, promptly notify any court overseeing the action of this Agreement, accompanying exhibits, and any associated orders and injunctions.

13.    **Notification to Requestors:** Within 10 days of the Effective Date, Defendants will send letters to all public records requestors with requests then known to be subject to the Preliminary Injunction to confirm whether the requestors wish for their requests to remain open.

14.    **Records Review and Disclosure Process:** The Parties agree that the following process will govern redaction and review of records subject to the Injunction:

a.    **Scope:** The purpose of this review process is to allow Plaintiffs to confirm whether records and information will be protected consistent with RCW 42.56.475 and the Training Materials.  The Parties therefore agree that Plaintiffs' review will focus solely on whether redactions/withholdings are consistent with the Training Materials and RCW 42.56.475. The Parties agree this Settlement does not concern the propriety of redactions under other Public Records Act exemptions or confidentiality laws.

SETTLEMENT AGREEMENT - 5
NO. 4:21-CV-05059-TOR

b.      **PRR Report:** Within 45 days of the Effective Date, Defendants will produce a report of all Public Records Requests since April 1, 2021, including: (1) text of the request; (2) name of the requestor; (3) type of requestor if known (e.g., attorney, media, incarcerated individual); (4) staff member assigned to the request; (5) date of receipt; (6) request status; and (7) pages offered (the "PRR report").

c.      ***Doe* Class List:** Within 45 days of the Effective Date, Defendants will produce a current copy of the Defendants' confidential list of all current and former incarcerated individuals known to Defendants to be transgender, intersex, gender non-conforming, and/or non-binary (the "*Doe* Class List").

d.      **Enjoined Request List:** Within 45 days of the Effective Date, Defendants will provide Plaintiffs' Counsel a list of all outstanding requests then known to be subject to the Injunction, including: (1) text of the request; (2) name of the requestor; (3) type of requestor if known (e.g., attorney, media, incarcerated individual); (4) staff member assigned to the request; (5) date of receipt; (6) request status; and (7) pages offered (the "Enjoined Request List").

e.      **Updated Lists:** Within 30 days after providing the PRR Report, *Doe* Class List, and Enjoined Request List, and every 30 days thereafter for a total of four months, Defendants will update these documents.  In addition to updating the status of requests on previous lists, the updated

lists will include the information required in subparagraphs (b) above for all new requests received since the previous list was provided that are known to be subject to the Injunction. Upon the request of either party, the Parties shall meet for a status conference within one week of Plaintiffs' counsel's receipt of these documents.

f.    **Requests to Review:** During the first six months after the Effective Date, Defendants shall provide Plaintiffs' Counsel relevant records, including requestor correspondence, responsive records, and proposed redactions/withholdings, for up to 27 Public Records Act requests selected by Plaintiffs' Counsel from those appearing on the Enjoined List or PRR Report. DOC will provide requested records with redactions marked within 5 business days if the response is completed at the time of Plaintiffs' Counsel's request to review. If the response is not completed when Plaintiffs' Counsel request review, Defendants will make good faith efforts to prioritize and complete the response (and provide it to Plaintiffs' Counsel) within 60 calendar days. If the response cannot be completed within 60 days, Defendants will produce an installment of no fewer than 500 pages. Defendants will continue to produce an installment of no fewer than 500 pages every 60 calendar days until the production is complete or until 8 months after the Effective Date, whichever comes first. The Parties agree that DOC will not be required to produce proposed redactions for a request after it has been abandoned or withdrawn

by the requestor.  Also, in recognition of the potential workload impacts of this process on DOC Public Records Unit staff, Plaintiffs agree they will make good faith efforts to sequence their requests over the 6-month period so as not to overwhelm staff with multiple requests at any one time.

g.    **Deadline for Completing Review and Response:** Plaintiffs will complete their review of any request made under subparagraph (f) as soon as practicable, but no later than 60 calendar days after receiving the records.  Upon completing their review, Plaintiffs' Counsel shall identify any instances in which they believe RCW 42.56.475 was not applied to the reviewed records consistent with the Training Materials.

h.    **Meet and Confer:** Within ten calendar days after receiving Plaintiffs' response, the Parties will meet and confer to resolve any disagreement.  If the Parties cannot reach agreement, Plaintiffs will have 14 calendar days to file a motion for *in camera* review.

i.    ***In Camera* Review:** On *in camera* review, the Parties agree they will request that the Court determine whether DOC applied RCW 42.56.475 to the records at issue in a manner consistent with the Training Materials.  Before producing records that have been reviewed by the Court, Plaintiffs will have ten calendar days to review the final production to ensure the redactions/withholdings reflect the Court's decision.

j.      **Post-Review Disclosure:** The Parties agree that records that have been approved for release by Plaintiffs' Counsel or the Court may be disclosed to the requestor without violating the Injunction.  Records that have not gone through the review process and been approved for release will remain subject to the Injunction.  Except in instances where a proposed release of records is brought to the Court for *in camera* review, Defendants will be the party ultimately responsible for the legal determination of whether records may be disclosed in response to Public Records Act requests.

15.    **Settlement Duration and Enforcement:** The following provisions shall govern the duration and enforcement of this settlement:

a.      **Automatic Expiration:** This Settlement Agreement shall automatically expire one year after the Effective Date, at which time the Parties will present a Stipulated Order dissolving the Injunction and dismissing the action with prejudice.

b.      **Motion to Extend Duration:** The Court may extend the Settlement upon motion by Plaintiffs if the Court finds that Defendants have failed to apply RCW 42.56.475 in a manner substantially consistent with the Training Materials, such that Plaintiffs would have a high likelihood of prevailing on their Eighth or Fourteenth Amendment claims if the Injunction were dissolved, or that Defendants have failed to train staff or to comply with the records review and disclosure process according to this

Agreement.  Extension of this Agreement shall include continuing the Permanent Injunction, an additional period of monitoring by Plaintiffs' Counsel as described in Paragraph 14 of this Agreement, and such further relief as the Court determines appropriate.  For purposes of extending or terminating the Settlement Agreement, the Parties agree that non-systemic deviations shall not prevent a finding that Defendants have applied RCW 42.56.475 in a manner substantially consistent with the Training Materials, provided that Defendants demonstrate that they have instituted policies and practices that are reasonably calculated to achieve durable and sustained compliance.  Evidence of episodic or isolated instances of redaction/withholding errors is not a sufficient basis to extend the Settlement.

       c.    **Informal Dispute Resolution:** The Parties agree to work in good faith to resolve disputes informally and minimize the need for Court involvement in enforcing this Settlement Agreement.

       d.    **Enforcement:** The Court shall retain jurisdiction to enforce the terms of this Agreement while it remains in effect.  Violations of the terms of this Agreement, including but not limited to the Injunction, training, and review and disclosure process, may be brought to the Court for enforcement and such further relief the Court determines appropriate.

    16.    **Attorneys' Fees:** Within ten business days of the Effective Date, Defendants will pay $650,000.00 in attorneys' fees and costs.  The Parties agree that

this amount resolves the claim for attorneys' fees and costs for this litigation, including any fees incurred by Plaintiffs in monitoring Defendants' compliance with the initial one-year term of this Settlement Agreement. However, Defendants agree that they will pay Plaintiffs' reasonable fees and costs directly associated with any successful motion to enforce the Settlement Agreement, including to extend the term of the Settlement or a motion for *in camera* review provided that, if Plaintiffs bring a successful motion for *in camera* review, the Court will not award Plaintiffs attorneys' fees for that motion if the Court finds that Defendants' interpretation of RCW 42.56.475 and the Training Materials was reasonable. Defendants further agree that they will pay Plaintiffs' reasonable fees and costs for monitoring Defendants' compliance beyond the initial one-year term of this Agreement, should the Agreement be extended. The Parties otherwise agree that neither party is to be considered a prevailing party in this action for any purpose, including, but not limited to, attorney fees.

17.    **Amendment:** By mutual agreement, the parties may change the terms of this Agreement, provided that such mutual agreement is memorialized in writing, signed by the Parties, and approved by the Court.

18.    **Construction:** This Agreement constitutes the final written expression of all the terms of this Agreement and is a complete and exclusive statement of these terms. No party hereto shall be considered the drafter of this Settlement

SETTLEMENT AGREEMENT - 11
NO. 4:21-CV-05059-TOR

Agreement for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause the provision to be construed against the drafter thereof.

19. **DRW Authority:** Nothing in this Agreement shall be deemed to limit the ability of Disability Rights Washington to fulfill its federal mandates pursuant to the Protection and Advocacy for Individuals with Mental Illness (PAIMI) Act, 42 U.S.C. §§ 10801-51, the Developmental Disabilities Assistance and Bill of Rights (DD) Act, 42 U.S.C. §§ 15041-45, and their implementing regulations, or limit DRW's authority as the Washington State protection and advocacy system, including its ability to access Defendants' records under federal and state law.

20. **Voluntary and Knowing Agreement:** The Parties verify that they have read and understand this Settlement Agreement, that they enter into this Agreement knowingly and voluntarily, and that this Agreement represents the entire agreement of the Parties in this case.

21. **Binding Effect:** This Settlement Agreement binds and inures to the benefit of the Parties and their successors.

Accepted:

_____          05-31-2023
TODD DOWLER                               _____
Assistant Secretary                       DATE
Department of Corrections

SETTLEMENT AGREEMENT - 12
NO. 4:21-CV-05059-TOR

1

_____          5/31/2023
_____

2  CANDIE M. DIBBLE, WSBA #42279          DATE
   TIM LANG, WSBA #21314

3  Assistant Attorneys General

4  Corrections Division

5  Accepted:

6

7  _____          5/30/23
_____

8  KATHERINE M. FORSTER, CA Bar #217609    DATE

9  Attorney for Plaintiffs
   Munger, Tolles & Olson LLP

10

11 _____          5/31/23
_____

   ETHAN D. FRENCHMAN, WSBA #54255         DATE

12 DANNY WAXWING, WSBA #54225

13 HEATHER McKIMMIE, WSBA #37630
   DAVID CARLSON, WSBA #35767

14 Attorney for Plaintiffs

15 Disability Rights Washington

16 _____          5/30/23
_____

17 JOE SHAEFFER, WSBA #33273              DATE

18 Attorney for Plaintiffs
   MacDonald Hoague & Bayless

19 On behalf of the American Civil
   Liberties Union of Washington

20 Foundation

21 _____          5/30/23
_____

22 NANCY TALNER, WSBA #11196              DATE

23 JAZMYN CLARK, WSBA #48224

24 Attorney for Plaintiffs
   American Civil Liberties Union of

25 Washington Foundation

26

SETTLEMENT AGREEMENT - 13
NO. 4:21-CV-05059-TOR

▮▮▮▮▮▮▮▮▮▮

Plaintiff

5-24-23

DATE

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SETTLEMENT AGREEMENT - 14
NO. 4:21-CV-05059-TOR

5/22/23
DATE

3 | Plaintiff

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SETTLEMENT AGREEMENT - 15
NO. 4:21-CV-05059-TOR

█████████████████████

5/20/2023
_____
DATE

Plaintiff

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

SETTLEMENT AGREEMENT - 14
NO. 4:21-CV-05059-TOR



5-18-23

DATE

Plaintiff

SETTLEMENT AGREEMENT - 17
NO. 4:21-CV-05059-TOR

5/18/23

DATE

4  | Plaintiff  V
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

SETTLEMENT AGREEMENT - 18
NO. 4:21-CV-05059-TOR

# EXHIBIT 1

PERMANENT INJUNCTION LANGUAGE

1. Defendants are **permanently enjoined** from publicly releasing any records, including, but not limited to, housing placement, discipline, PREA, grievance, and health care records, that identify or can reasonably be associated with the identity of any class member and directly relate to a class member's: (1) PREA risk assessment, risk indicator, and monitoring plan; (2) involvement in any PREA investigations or allegations, including but not limited to reports of sexual abuse or sexual harassment; (3) transgender, intersex, nonbinary, or gender nonconforming status; (4) sexual orientation; (5) genital anatomy; (6) history of sexual victimization; and (7) medical and mental health diagnoses, conditions, treatment, or procedures.

2. Defendants are not enjoined from sharing such records in a non-public manner consistent with federal and state law and penological necessity. Defendants may share this information with other correctional and law enforcement agencies, outside health care treatment providers for the purposes of treatment, the Office of the Corrections Ombuds, and the state protection and advocacy system. Defendants may also release this information in defensive litigation where a plaintiff has already disclosed the exact same information in open court, but in all other circumstances information or records

PERMANENT INJUNCTION LANGUAGE

covered by this Injunction must be distributed with a protective order and filed in court under seal.

3.  Defendants are not enjoined from disclosing records that have been through the Parties' review and approval process provided in the Settlement Agreement (ECF No. __). Records described in Section 1 above that have not been through the review process shall not be disclosed as long as this order remains in effect.

4.  This Order shall expire one year after entry unless by order of this Court.

# EXHIBIT 2

**TITLE:  Newsbrief 23-01**

Effective:              February ___, 2023
**SUBJECT:**              **Body Scanner Images**

Body Scanner Images should be withheld from disclosure in their entirety, when doing so, cite to the following:

*RCW 42.56.475(1)(a) – "The following information or records created or maintained by the department of corrections is exempt from public inspection and copying under this chapter: Body scanner images from any system designed to detect and visualize contraband hidden in body cavities or beneath clothing, including backscatter X-ray, millimeter wave, and transmission X-ray systems."*

<u>Please remember</u>:

- You must pull and maintain a copy of the responsive body scan image(s) even though it will be withheld in its entirety.
- A copy of the responsive image(s) must be maintained with the public records file per required retention schedule.

**Please reference the "ESHB 1956/RCW 42.56.475 Implementation Training UPDATE" found on the PRU SharePoint site for more information and specific examples.**

**TITLE:  Newsbrief 23-02**

Effective:          February ___, 2023
**SUBJECT:          PREA Records & Reports of Sexual Abuse & Harassment Involving**
                    **Incarcerated Individuals**

ESHB 1956 was signed into law in March 2022 and protects the following information from disclosure related to Prison Rape Elimination Act (PREA), Sexual Abuse and Sexual Harassment Records involving any incarcerated individual:

**PREA Risk Assessments, Risk Indicators, and Monitoring Plans**

All of the following PREA information must be withheld from disclosure, regardless of where it may be found:

- PREA Risk Assessments
- Risk Indicators ("No Risk," "Potential Victim," "Potential Perpetrator," or "Dual Identifier")
- Monitoring Plans and existence of a PREA Monitoring Plan for an individual

Some of the most common locations these records are often found are within OMNI, PREA investigations, & OnBase, however, this information is exempt from disclosure regardless of where the record may be found.

**Reports of Sexual Abuse and Sexual Harassment**

Reports of sexual abuse and sexual harassment involving incarcerated individuals are protected from disclosure and should be withheld, this includes:

- All open PREA investigations – PREA investigations are not disclosable while the investigation is ongoing.
- Any reporting of a sexual abuse or harassment allegations - This exemption applies regardless of:
  - Who is reporting the concern
  - The ultimate finding of any investigation
  - Where records are located (Common locations include PREA hotline recordings, IMRS reports, Resolution requests, kites, JPAY messages, emails, etc.)

Please see Newsbrief 17-01: "Exempt PREA Records" for more information about redacting reports of sexual abuse or harassment.

1

- All identifiers in agency records that may lead to the identity of any incarcerated individual involved. (Examples include but are not limited to name, dob, DOC #, SSN's, FBI #'s, Cell #, etc.)

Reports of sexual harassment include complaints of derogatory language related to sexual orientation or gender identity, as well as the persistent misgendering or use of incorrect gender pronouns or gendered language.

**Closed PREA Investigation Records**

For closed PREA investigations, the disclosure of records depends on whether the request specifies an incarcerated individual(s) and whether the closed PREA investigation resulted in a substantiated finding against an incarcerated individual as follows:

- If a public records request seeks PREA investigation records about specific incarcerated individual(s) (e.g. "all PREA records for inmate Jane Doe"), staff must withhold the records unless the specified individual(s) was determined to be the substantiated perpetrator of the PREA allegation, in which case staff must redact all identifiers of other incarcerated individuals.

- If a public records request is about DOC staff, contractors, or volunteers (e.g. "all PREA records for Officer Jane Doe"), staff must redact all identifiers of incarcerated individuals unless they were the substantiated perpetrator of the PREA allegation.

- If a public records request does not seek records about a specific individual, staff must redact all identifiers of incarcerated individuals, unless an incarcerated individual was determined to be the substantiated perpetrator of the PREA allegation. In that case, the name of the substantiated perpetrator would not be redacted, but any identifying information about victims or witnesses who are incarcerated individuals must be redacted.

- If a closed PREA investigation has both substantiated and unsubstantiated allegations regarding an incarcerated individual, staff should only redact information where it is clear that the information relates solely to an unsubstantiated allegation.

**Other Records Containing PREA Information or Reports**

Other records, including disciplinary records and OMNI records, may contain PREA information, such as reports of sexual abuse, or the names of victims or witnesses in PREA investigations. In

such circumstances, the identifying information of any incarcerated individuals who were the victim(s), witnesses, or not-substantiated perpetrator in the PREA case is exempt.

**Exceptions:**

The subject of the record or a 3rd party with a signed release can receive this exempt information, however, information regarding other incarcerated individuals in the records must be redacted.


**When redacting or withholding any of the above information, cite to the following:**

28 C.F.R. § 115.61(b) - "Apart from reporting to designated supervisors or officials, staff shall not reveal any information related to a sexual abuse report to anyone other than to the extent necessary, as specified in agency policy, to make treatment, investigation, and other security and management decisions." This federal regulation constitutes an "other statute" under RCW 42.56.070(1).

RCW 42.56.475 (1)(b) – "The following information or records created or maintained by the department of corrections is exempt from public inspection and copying under this chapter: The following information and records created or maintained pursuant to the federal prison rape elimination act, 34 U.S.C. Sec. 30301 et seq., and its regulations: (i) Risk assessments, risk indicators, and monitoring plans; (ii) Reports of sexual abuse or sexual harassment, as defined under 28 C.F.R. 115.6;  (iii) Records of open prison rape elimination act investigations; and (iv) The identities of individuals other than department of corrections staff, contractors, and volunteers, in closed prison rape elimination act investigation reports and related investigative materials; however, the identity of an accused individual is not exempt if the allegation is determined to have been substantiated."

RCW 42.56.240(2) – "Information revealing the identity of persons who are witnesses to or victims of crime or who file complaints with investigative, law enforcement, or penology agencies, other than the commission, if disclosure would endanger any person's life, physical safety, or property. If at the time a complaint is filed the complainant, victim, or witness indicates a desire for disclosure or nondisclosure, such desire shall govern. However, all complaints filed with the commission about any elected official or candidate for public office must be made in writing and signed by the complainant under oath."

RCW 42.56.070(1) – "Each agency, in accordance with published rules, shall make available for public inspection and copying all public records, unless the record falls within the specific exemptions of subsection (6) of this section, this chapter, or other statute which exempts or prohibits disclosure of specific information or records. To the extent required to prevent an unreasonable invasion of personal privacy interests protected by this chapter, an agency shall delete identifying details in a manner consistent with this chapter when it

makes available or publishes any public record; however, in each case, the justification for the deletion shall be explained fully in writing."

**Please reference the "ESHB 1956/RCW 42.56.475 Implementation Training UPDATE" found on the PRU SharePoint site for more information and specific examples.**

TITLE:  Newsbrief 23-03

Effective:        February ___, 2023
**SUBJECT:**        **Incarcerated Individual Health Information Located Outside Medical Records**

ESHB 1956 was signed into law in March 2022 and protects health information in records other than an incarcerated individual's medical, mental health or dental files (RCW 70.02, Exemption #15 on the DOC exemption log apply to these medical records).

- Definition of an Incarcerated Individual for purposes of application of this exemption includes any individual currently or formerly under DOC jurisdiction.  In short, all individuals with a DOC #.

RCW 42.56.475(1)(c), protects any information in whatever records it may exist that identifies or can readily be associated with the identity of an incarcerated individual and directly relates to the following:

- Medical, mental health or dental diagnosis or conditions,

- Medical, mental health or dental services, treatments, or procedures,

- Complaints, kites, resolution requests, JPAY messages, or other communications about such services,

- Transgender, intersex, nonbinary, or gender nonconforming status,

- Sexual orientation,

- Genital anatomy

- Gender affirming care or accommodations, OTHER THAN, an incarcerated individual's preferred name, pronouns, and gender marker.

**What is NOT considered health information?**

- Information already exempt under RCW 42.56.360(2) and RCW 70.02, and

- Information related to injuries, OTHER THAN injuries related to medical procedures or genital anatomy, contained in incident reports, infraction records, or use of force reports prepared by DOC staff other than health care providers.

- A person's preferred name, pronouns, and gender marker.

1

**Redaction v. Total Withholding**

- If the existence of the record itself would disclose protected information specific to any individual, the records must be withheld in its entirety or the existence of the form as related to a specific individual must be redacted  (Examples include but are not limited to, DOC 02-420 Preferences Request Form; DOC 02-422 Transgender, Intersex, and Non-binary Housing Multi-Disciplinary Team DOC 02-384 Housing Protocol for Transgender, Intersex, and Non-Binary Individuals; DOC 02-385 Housing Review for Transgender, Intersex, and Non-Binary Individuals).

- If existence of the record does not give away any information that is protected under the definition of health information, then the record should be redacted to protect any health information it may include.

**Exemption Log Requirement Exception re: Health Information**

- Specific to redactions and/or withholdings of "health information" made under this bill:
  - Cite to 1(C) *without further explanation*.

- Only the # of pages withheld should be included on the exemption log NOT any additional information usually required when withholding other types of exempt records.

**Exception**

The subject of the record or a 3rd party with a signed authorization from the subject of the record can receive their own records.  Ensure any other incarcerated individuals' health information found in the same records is redacted.

**When redacting or withholding any of the above information, cite to the following:**

RCW 42.56.475(1)(c) – "The following information or records created or maintained by the department of corrections is exempt from public inspection and copying under this chapter: Health information in records other than an incarcerated individual's medical, mental health, or dental files."

***Note:*** per RCW 42.56.475(3) – "An agency refusing, in whole or in part, inspection of a public record containing information listed in subsection (1)(c) of this section may cite to subsection (1)(c) of this section, without further explanation, when providing the brief explanation required by RCW **42.56.210**(3), and shall also identify the number of pages withheld, if any pages are withheld in their entirety.

**Please reference the "ESHB 1956/RCW 42.56.475 Implementation Training UPDATE" found on the PRU SharePoint site for more information and specific examples.**

# ESHB 1956/RCW 42.56.475 Implementation Training UPDATE

DOC PRU - 2023

## ESHB 1956

In March 2022, ESHB 1956 was signed into law and created additional exemptions to the PRA specific to DOC records.  These exemptions were added to the Public Records Act under RCW 42.56.475 and include:

1. Body scanner images
2. Specific PREA records & Sexual abuse and harassment information
3. Health information (definition provided in bill) located outside an Incarcerated Individual's medical/mental health or dental files.

2

## Body Scanner Images

RCW 42.56.475(1)(a) exempts:

*Body scanner images from any system designed to detect and visualize contraband hidden in body cavities or beneath clothing, including backscatter X-ray, millimeter wave, and transmission X-ray systems.*

These records must be gathered and a copy of any responsive body scanner images maintained with the public records file even though they must be withheld from disclosure in their entirety.

- Currently there is a body scanner at WCCW only but this will be expanding to other facilities in the future.

3





## RCW 42.56.475(1)(b) – PREA Records

This bill exempts the following information and records created or maintained pursuant to the federal rape elimination act, 34 U.S.C. Sec. 30301 et seq., and its regulations:

- Risk assessments,

- Risk Indicators,

- Monitoring plans,

- Reports of sexual abuse or sexual harassment as defined by 28 C.F.R. 115.6, (regardless of how it's reported, phone recording, IMRS, correspondence, etc.)

- Records of open PREA investigations,

- The identities of individuals other than DOC staff, contractors, and volunteers, in closed PREA investigation reports and related investigation materials, HOWEVER, the identity of an accused incarcerated individual is NOT exempt IF the closed investigation is substantiated.

5

## EXCEPTION TO THE RULE

- The exemption of information for both PREA and health information does NOT apply to requests made by the incarcerated individual who is the subject of the information, or where the subject of the information has provided an authorization or to the incarcerated individual's personal representative.

- Remember to review the records for information concerning other incarcerated individuals that may be involved where they are not the requestor and there is no signed release for their information.

6

## PREA Risk Assesments, Indicators & Monitoring Plans

All of the following PREA information must be withheld from disclosure:

- PREA Risk Assessments
- Risk Indicators *("No Risk," "Potential Victim," "Potential Perpetrator," or "Dual Identifier")*
- Monitoring Plans

Some of the most common locations these records are found are within OMNI, PREA investigations, & OnBase, however, <u>this information is exempt from disclosure regardless of where the record may be found</u>.

7

## PREA Risk Assessments



- There is a hard copy form that can be used.

- This same information is recorded in OMNI by the Classification Counselor

8





*Specific to .475, redact the protected health information PULHES codes and PREA indicators: "No Risk Identified" and "PREA Predator".*





*Specific to .475, redact the protected health information PULHES codes and PREA indicators: "dual identified" and "potential victim."*



# PREA Indicators Cont….

*What redactions would be required if this record were responsive to a request for "All OMNI files of transgender inmates at WCCW" from a third-party requestor with no ROI?*

*Assume that Mincie Baggs is transgender.*



*Specific to .475, redact the name of the transgender individual, their DOC #, cell #, DOB, the identity of the individual as a victim in a PREA case, and PREA indicators of all individuals.*

14

# PREA Monitoring Plans

*What redactions would be required if this OMNI page were responsive to a request for "All records related to Fern Peliciano, DOC #232223" from a third-party requestor with no ROI.*

**Details**

Date & Time Created: 2/02/2022 3:02 PM
Offender Location At Occurrence: WCCW
Date & Time Of Occurrence: 2/02/2022
DOC No.: 232223
Offender Name: PELICIANO, Fern
Author Name: Bird, Jessica L
Events: PREA Monitoring ( PM )

**Text**

Met with P Per policy DOC 490.820 a monitoring plan has been established to address the following: Talked to the Incarcerated Individual and told her to come to staff if she is being pressured in any way and the Counselor will be checking on her status frequently. a) Increased staff initiated contact between the assigned Counselor and the Incarcerated Individual. b) Increased Incarcerated Individual reporting to staff (e.g., checking in with custody staff, the assigned Counselor, etc.). c) Notification of screening results to unit staff with note to monitor the Incarcerated Individual for changes in baseline behavior (e.g., cell change requests, giving/receiving store, depression, staff avoidance, etc.) and referral to Mental Health if changes occur. d) Instructing the Incarcerated Individual to immediately report any sexually motivated interactions by other Incarcerated Individuals. e) Requiring the Incarcerated Individual to maintain scheduled meetings with mental health staff, other items that correlate with any of the specific information contained in the assessment.



## PREA Monitoring Plans

**Details**

Date & Time Created: 2/02/2022 3:02 PM
Offender Location At Occurrence: WCCW
Date & Time Of Occurrence: 2/02/2022
DOC No.: 232223
Offender Name: PELICIANO, Fern
Author Name: Bird, Jessica L
Events: PREA Monitoring ( PM )

**Text**

Met with P Per policy DOC 490.820 a monitoring plan has been established to address the following: Talked to the Incarcerated Individual and told her to come to staff if she is being pressured in any way and the Counselor will be checking on her status frequently. a) Increased staff initiated contact between the assigned Counselor and the Incarcerated Individual. b) Increased Incarcerated Individual reporting to staff (e.g., checking in with custody staff, the assigned Counselor, etc.). c) Notification of screening results to unit staff with note to monitor the Incarcerated Individual for changes in baseline behavior (e.g., cell change requests, giving/receiving store, depression staff avoidance, etc.) and referral to Mental Health if changes occur. d) Instructing the Incarcerated Individual to immediately report any sexually motivated interactions by other Incarcerated Individuals. e) Requiring the Incarcerated Individual to maintain scheduled meetings with mental health staff, other items that correlate with any of the specific information contained in the assessment.

*Per .475, redact the text narrative and the PREA Monitoring event type to the left of the narrative because PREA monitoring plans are protected and the association of a PREA monitoring plan with an individual necessarily discloses their status as transgender, a victim of sexual abuse/harassment, or that their PREA risk score is a potential victim or dual-identifier.*

16

# PREA Investigations & Reports of Sexual Abuse & Harassment

Reports of Sexual Abuse and Sexual Harassment involving incarcerated individuals are protected from disclosure and should be withheld, this includes:

- All open PREA investigations – PREA investigations are not disclosable while the investigation is ongoing.

- Any reporting of a sexual abuse or harassment allegations - This exemption applies regardless of:
  - Who is reporting the concern
  - The ultimate finding of the investigation
  - Where records are located *(Common locations include PREA hotline recordings, IMRS reports, Resolution requests, etc.)*

17

# PREA Investigations & Reports of Sexual Abuse & Harassment

- All identifiers in agency records that may lead to the identity of any incarcerated individual involved. *(Examples include but are not limited to name, dob, DOC #, SSN's, FBI #'s, Cell assignment #, etc.)*

When looking at redaction of identifiers, always ask yourself,
**"How identifying is it"?**

- Brown hair?  Gray hair?  No hair?
- Born in Washington?  Born in Seattle, WA?  Born in Manilla Philippines?
- Scar? 2" scar? 2" scar on right forearm?
- WA State Conviction?  King County Conviction?  Conviction Cause #?

18

# Reports of Sexual Abuse & Harassment

Sexual abuse and sexual harassment reports include but are not limited to:

- PREA hotline records and associated Incident Management Reporting System (IMRS) reports of those recordings;
- PREA complaints by incarcerated persons reporting sexual abuse and sexual harassment of themselves or another incarcerated individual;
- Grievances or resolution program filings referencing or reporting an allegation of sexual abuse or sexual harassment;
- OMNI fields relating to safety concerns relating to keep separates or other issues stemming from sexual abuse or harassment; and
- Kites, JPAY messages, emails or other communications by incarcerated persons or third parties reporting sexual abuse or sexual harassment of an incarcerated person to the Department of Corrections.

19

# Sexual Abuse & Harassment Definitions

The following definitions of sexual abuse and sexual harassment apply:

Sexual abuse of <u>an incarcerated person by another incarcerated person</u> includes any of the following acts, if the victim does not consent, is coerced into such act by overt or implied threats of violence, or is unable to consent or refuse:

- ○ Contact between the penis and the vulva or the penis and the anus, including penetration, however slight;
- ○ Contact between the mouth and the penis, vulva, or anus;
- ○ Penetration of the anal or genital opening of another person, however slight, by a hand, finger, object, or other instrument; and
- ○ Any other intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or the buttocks of another person, excluding contact incidental to a physical altercation.

20

## Sexual Abuse & Harassment Definitions

Sexual abuse of <u>an incarcerated person by a staff member, contractor, or volunteer</u> includes any of the following acts, with or without consent of incarcerated person:

- ○ Contact between the penis and the vulva or the penis and the anus, including penetration, however slight;
- ○ Contact between the mouth and the penis, vulva, or anus;
- ○ Contact between the mouth and any body part where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;
- ○ Penetration of the anal or genital opening, however slight, by a hand, finger, object, or other instrument, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;
- ○ Any other intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

21

## Sexual Abuse & Harassment Definitions

Sexual abuse of <u>an incarcerated person by a staff member, contractor, or volunteer</u> continued...

○ Any attempt, threat, or request by a staff member, contractor, or volunteer to engage in the activities as described above;

○ Any display by a staff member, contractor, or volunteer of his or her uncovered genitalia, buttocks, or breast in the presence of an incarcerated person, and

○ Voyeurism by a staff member, contractor, or volunteer. Voyeurism by a staff member, contractor, or volunteer means an invasion of privacy of an incarcerated person by staff for reasons unrelated to official duties, such as peering at an incarcerated person who is using a toilet in his or her cell to perform bodily functions; requiring an inmate to expose his or her buttocks, genitals, or breasts; or taking images of all or part of an incarcerated person' naked body or of an incarcerated person performing bodily functions.

22

## Sexual Abuse & Harassment Definitions

Sexual harassment includes:

- ○ Repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one incarcerated individual toward another including disparaging comments about sexual orientation (e.g. remarks about homosexuality) or gender identity (e.g. remarks about being transgender or repeated remarks that use the wrong gender pronoun); and

- ○ Repeated verbal comments or gestures of a sexual nature to an incarcerated individual by a staff member, contractor, or volunteer, including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures including disparaging comments about sexual orientation (e.g. remarks about homosexuality) or gender identity (e.g. remarks about being transgender or repeated remarks that use the wrong gender pronoun).

## PREA Investigations

**The exemption language protects:**

The identities of individuals other than DOC staff, contractors, and volunteers, in closed PREA investigation reports and related investigation materials, HOWEVER, the identity of an accused incarcerated individual is NOT exempt IF the closed investigation is substantiated.

- If a PREA investigation contains allegations against either an incarcerated individual or an employee that have both substantiated and unsubstantiated claims, the identity should be left in. See newsbrief 06-09 related to staff PREA investigations.
- When an investigation pertains to a specific individual(s) and contains multiple findings, redact any allegations resulting in an unsubstantiated finding found on the investigative cover sheet.
- All other exemptions that exist still apply so in addition to this new language, the records should be reviewed for any other necessary redactions.

# Determining the Status of PREA Investigations

- RCW 42.56.475 exempts open PREA investigation records from disclosure.

- For closed PREA investigations, RCW 42.56.475 exempts the identities of incarcerated individuals who are the victims or witnesses, as well as the identities of perpetrators when the allegation is unsubstantiated or unfounded (i.e. not substantiated).

- Prior to disclosing a PREA investigative record, you must identify whether a PREA case is open or closed and, if the record is closed, you must also determine whether the allegation was substantiated.

- Because cases are re-opened and findings are changed, you cannot accurately determine the status of a PREA investigation by reading a record. You must check the PREA page in the OMNI of the incarcerated individual identified as the alleged perpetrator to determine whether an investigation is open and whether the allegation was substantiated. If a case is open, there will not be a finding listed under the column "Findings." If the case is closed, the final outcome of the case will be noted as substantiated, unsubstantiated, or unfounded.

25

# Open Status of PREA Investigation: Example

**From:** O'Hare, Nicole (DOC) <nohare@DOC1.WA.GOV>
**Sent:** Friday, March 18, 2021 8:53 PM
**To:** Sjolund, Mark R. (DOC) <mrsjolund@DOC3.WA.GOV>
**Subject:** Didn't see this coming....

I/I Debbie Smith 312642 is found to have committed WAC violation 635 committing sexual assault against another offender, as defined in department policy. On 3/15/2021 during a strip search of I/ I Debbie what appeared to be a bite mark was observed on I/I Debbie 312642. When asked about the mark, I/I Debbie responded, "I'm not talking about that," she further added that she's been in prison a long time and knows how to report it [PREA]. Photographs were taken of the mark and the incident was reported. On 3/15/2021 information was discovered that I/I Debbie was pressuring I/I Tammy to continue a sexual relationship. A witness to the events stated that I/I Debbie "almost beat her [I/I Tammy] because she didn't want to anymore to have sex anymore." On 3/15/2021 , PREA Case 23-20702 was opened to investigate the allegation. 1/1 Debbie was moved to MSU A side to separate her from the victim. I/I Debbie persistently sent correspondence to the PREA Office at WCCW and to the Superintendent to be moved back to MSU-B side. A thorough investigation of the allegation was completed by CC3 Jimmie Herrod. Based on a preponderance of evidence, PREA investigation 23-20702 was determined to substantiated (the allegation was determined to have occurred). PREA Investigation 23-20702 can be reviewed by the Hearings Officer in the PREA office upon request.

*What redactions would be required if this record were responsive to a request for "All records relating to PREA cases involving Debbie Smith" by a third-party requestor with no ROI and after checking OMNI it is determined that the investigation is still active?*



Withhold as shown if investigation is active.

# Closed as Unfounded PREA Investigation: Example

**From:** O'Hare, Nicole (DOC) <nohare@DOC1.WA.GOV>
**Sent:** Friday, March 18, 2021 8:53 PM
**To:** Sjolund, Mark R. (DOC) <mrsjolund@DOC1.WA.GOV>
**Subject:** Didn't see this coming....

I/I Debbie Smith 312642 is found to have committed WAC violation 635 committing sexual assault against another offender, as defined in department policy. On  3/15/2021  during a strip search of I/I Debbie what appeared to be a bite mark was observed on I/I Debbie 312642. When asked about the mark, I/I Debbie responded, "I'm not talking about that," she further added that she's been in prison a long time and knows how to report it [PREA]. Photographs were taken of the mark and the incident was reported. On  3/15/2021  information was discovered that I/I Debbie was pressuring I/I Tammy to continue a sexual relationship. A witness to the events stated that I/I Debbie "almost beat her [I/I Tammy] because she didn't want to anymore to have sex anymore." On  3/15/2021 , PREA Case 23-20702 was opened to investigate the allegation. I/I Debbie was moved to MSU A side to separate her from the victim. I/I Debbie persistently sent correspondence to the PREA Office at WCCW and to the Superintendent to be moved back to MSU-B side. A thorough investigation of the allegation was completed by CC3 Jimmie Herrod. Based on a preponderance of evidence, PREA investigation 23-20702 was determined to substantiated (the allegation was determined to have occurred). PREA investigation 23-20702 can be reviewed by the Hearings Officer in the PREA office upon request.

What redactions would be required if this record were responsive to a request for "All records relating to PREA cases involving Debbie Smith" by a third-party requestor with no ROI and it was determined after checking OMNI that PREA Case 23-20702 was closed as unfounded?

I/I Debbie Smith's OMNI shows that the finding in PREA Case 20702 was closed as "Unfounded." Therefore, the entire narrative should be redacted pursuant to RCW 42.56.475(1)(b)(iv) to exempt the identities of incarcerated individuals who are the victims and non-substantiated perpetrators in closed PREA investigations.



Withhold to protect I/I Debbie Smith's identity as the alleged perpetrator in a PREA case that was not substantiated

# Closed as Substantiated PREA Investigation: Example

**From:** O'Hare, Nicole (DOC) <nohare@DOC1.WA.GOV>
**Sent:** Friday, March 18, 2021 8:53 PM
**To:** Sjolund, Mark R. (DOC) <mrsjolund@DOC1.WA.GOV>
**Subject:** Didn't see this coming....

I/I Debbie Smith 312642 is found to have committed WAC violation 635 committing sexual assault against another offender, as defined in department policy. On 3/15/2021 during a strip search of I/I Debbie what appeared to be a bite mark was observed on I/I Debbie 312642. When asked about the mark, I/I Debbie responded, "I'm not talking about that," she further added that she's been in prison a long time and knows how to report it [PREA]. Photographs were taken of the mark and the incident was reported. On 3/15/2021 information was discovered that I/I Debbie was pressuring I/I Tammy to continue a sexual relationship. A witness to the events stated that I/I Debbie "almost beat her [I/I Tammy] because she didn't want to anymore to have sex anymore." On 3/15/2021, PREA Case 23-20702 was opened to investigate the allegation. I/I Debbie was moved to MSU A side to separate her from the victim. I/I Debbie persistently sent correspondence to the PREA Office at WCCW and to the Superintendent to be moved back to MSU-B side. A thorough investigation of the allegation was completed by CC3 Jimmie Herrod. Based on a preponderance of evidence, PREA investigation 23-20702 was determined to substantiated (the allegation was determined to have occurred). PREA investigation 23-20702 can be reviewed by the Hearings Officer in the PREA office upon request.

What redactions would be required if this record were responsive to a request for "All records relating to PREA cases involving Debbie Smith" by a third-party requestor with no ROI and it was determined after checking OMNI that PREA Case 23-20702 was closed as substantiated?

I/I Debbie Smith's OMNI shows that the finding in PREA Case 20702 was closed as "Substantiated." Therefore, the name of victims and any incarcerated witnesses should be redacted. The name of the substantiated perpetrator should not be redacted.

# Closed as Substantiated PREA Investigation: Example

**From:** O'Hare, Nicole (DOC) <nohare@DOC1.WA.GOV>
**Sent:** Friday, March 18, 2021 8:53 PM
**To:** Sjolund, Mark R. (DOC) <mrsjolund@DOC1.WA.GOV>
**Subject:** Didn't see this coming....

I/I Debbie Smith 312642 is found to have committed WAC violation 635 committing sexual assault against another offender, as defined in department policy. On  3/15/2021  during a strip search of I/I Debbie what appeared to be a bite mark was observed on I/I Debbie 312642. When asked about the mark, I/I Debbie responded, "I'm not talking about that," she further added that she's been in prison a long time and knows how to report it [PREA]. Photographs were taken of the mark and the incident was reported. On  3/15/2021  information was discovered that I/I Debbie was pressuring I/I Tammy to continue a sexual relationship. A witness to the events stated that I/I Debbie "almost beat her I/I Tammy because she didn't want to anymore to have sex anymore." On  3/15/2021 , PREA Case 23-20702 was opened to investigate the allegation. I/I Debbie was moved to MSU A side to separate her from the victim. I/I Debbie persistently sent correspondence to the PREA Office at WCCW and to the Superintendent to be moved back to MSU-B side. A thorough investigation of the allegation was completed by CC3 Jimmie Herrod. Based on a preponderance of evidence, PREA investigation 23-20702 was determined to substantiated (the allegation was determined to have occurred). PREA investigation 23-20702 can be reviewed by the Hearings Officer in the PREA office upon request.

Redact the name of victims and any incarcerated witnesses. The name of the substantiated perpetrator should not be redacted.

31

# Closed Case, Request Does Not Name Individual: Example

**From:** O'Hare, Nicole (DOC) <nohare@DOC1.WA.GOV>
**Sent:** Friday, March 19, 2021 8:53 PM
**To:** Sjolund, Mark R. (DOC) <mrsjolund@DOC1.WA.GOV>
**Subject:** Didn't see this coming....

I/I Debbie Smith 312642 is found to have committed WAC violation 635 committing sexual assault against another offender, as defined in department policy. On 3/15/2021 during a strip search of I/ I Debbie what appeared to be a bite mark was observed on I/I Debbie 312642. When asked about the mark, I/I Debbie responded, "I'm not talking about that," she further added that she's been in prison a long time and knows how to report it [PREA]. Photographs were taken of the mark and the incident was reported. On 3/15/2021 information was discovered that I/I Debbie was pressuring I/I Tammy to continue a sexual relationship. A witness to the events stated that I/I Debbie "almost beat her [I/I Tammy] because she didn't want to anymore to have sex anymore." On 3/15/2021 , PREA Case 23-20702 was opened to investigate the allegation. I/1 Debbie was moved to MSU A side to separate her from the victim. I/I Debbie persistently sent correspondence to the PREA Office at WCCW and to the Superintendent to be moved back to MSU-B side. A thorough investigation of the allegation was completed by CC3 Jimmie Herrod. Based on a preponderance of evidence, PREA investigation 23-20702 was determined to substantiated (the allegation was determined to have occurred). PREA investigation 23-20702 can be reviewed by the Hearings Officer in the PREA office upon request.

What redactions would be required if this record were responsive to a request for "All records relating to all PREA cases at WCCW" by a third-party requestor with no ROI and it was determined after checking OMNI that the finding in PREA Case 23-20702 was closed as unfounded?

# Closed Case, Request Does Not Name Individual: Example

**From:** O'Hare, Nicole (DOC) <nohare@DOC1.WA.GOV>
**Sent:** Friday, March 18, 2021 8:53 PM
**To:** Sjolund, Mark R. (DOC) <mrsjolund@DOC1.WA.GOV>
**Subject:** Didn't see this coming....

I/I Debbie Smith 312642 is found to have committed WAC violation 635 committing sexual assault against another offender, as defined in department policy. On 3/15/2021 during a strip search of I/ I Debbie what appeared to be a bite mark was observed on I/I Debbie 312642. When asked about the mark, I/I Debbie responded, "I'm not talking about that," she further added that she's been in prison a long time and knows how to report it [PREA]. Photographs were taken of the mark and the incident was reported. On 3/15/2021 information was discovered that I/I Debbie was pressuring I/I Tammy to continue a sexual relationship. A witness to the events stated that I/I Debbie "almost beat her I/I Tammy because she didn't want to anymore to have sex anymore." On 3/15/2021 , PREA Case 23-20702 was opened to investigate the allegation. I/I Debbie was moved to MSU A side to separate her from the victim. I/I Debbie persistently sent correspondence to the PREA Office at WCCW and to the Superintendent to be moved back to MSU-B side. A thorough investigation of the allegation was completed by CC3 Jimmie Herrod. Based on a preponderance of evidence, PREA investigation 23-20702 was determined to substantiated (the allegation was determined to have occurred). PREA investigation 23-20702 can be reviewed by the Hearings Officer in the PREA office upon request.

Redact the names of all victims, witnesses, and also redact the name of the alleged perpetrator because the case was closed as unfounded.

# Reports of Sexual Abuse

*What redactions would be required of these records in response to a request for "All records related to transgender inmates accused of sexual assault or harassment" from a third-party requestor with no ROI?*

**Narrative**

| Date | Narrative |
|---|---|
| 2/06/2018 | The PREA unit received a letter from Offender Bartcased Jacke 820229 addressed to Scott Russell reporting that while at MCC TRU the staff inability to keep him safe from sexual harassment and violent behavior. Jacke was assigned a cellmate Mitch Soure 287545, (C Unit cell 450) a male transgender that is considered a predator by the PREA scoring and violent crime history. Soure started to groom Jacke through manipulative behavior by giving him store items. |

**Narrative**

| Date | Narrative |
|---|---|
| 05/29/2023 | Hotline call: Ya I am calling to report about stuff going on at Stafford Creek Correctional Center Unit H2 A pod there is an offender Bart Earnie (331289 BARTEARNIE is predator arising an |

34



*Specific to .475 redactions, redact the full narratives, other than "the PREA Unit received a letter" and "Hotline Call."*

# PREA Investigation Example

*What redactions would be required if this record were responsive to a request for "All PREA Investigations in 2020" from a third-party requestor with no ROI?*

| EMPLOYEE AND/OR OFFENDERS INVOLVED | |
| --- | --- |
| **Accused** | **Victim** |
| ☐ Unknown<br>██ 22 | ☐ Unknown<br>BUTTERSWORTH, Mary # 346269 |

Please indicate the specific allegations and corresponding finding below, sign the form, and return by email (scan) with the complete investigation report to DOC PREA Triage. Additional lines may be added as needed.

| PREA ALLEGATION(S) (ADD / DELETE LINES AS NEEDED) | FINDING |
| --- | --- |
| C/O ██ 22 ██ **DEMANDED THAT BUTTERSWORTH,** **Mary** #346269 **UNDRESS IN FRONT OF HER FOR** ██ **HER OWN SEXUAL GRATIFICATION** | ☐ Substantiated<br>☐ Unsubstantiated<br>☒ Unfounded |
| C/O ██ 22 ██ **MADE THE COMMENT "I** (BUTTERSWORTH) **HAVE BIGGER TITTIES THAN SHE DOES AND** I ██ 22 **WANT TO SEE THEM"** | ☐ Substantiated<br>☐ Unsubstantiated<br>☒ Unfounded |

*What redactions would be required if this record was responsive to a request for "All PREA investigations in 2020" from a third-party requestor with no ROI? Note that the name of the alleged C/O perpetrator is redacted for reasons other than .475.*

36

# PREA Investigation Example

| EMPLOYEE AND/OR OFFENDERS INVOLVED | |
| --- | --- |
| **Accused** | **Victim** |
| ☐ Unknown<br>22 | ☐ Unknown<br>BUTTERSWORTH, Mary # 346269 |

Please indicate the specific allegations and corresponding finding below, sign the form, and return by email (scan) with the complete investigation report to DOC PREA Triage. Additional lines may be added as needed.

| PREA ALLEGATION(S) (ADD / DELETE LINES AS NEEDED) | FINDING |
| --- | --- |
| C/O _____ 22 _____ DEMANDED THAT BUTTERSWORTH Mary #346269 UNDRESS IN FRONT OF HER FOR HER OWN SEXUAL GRATIFICATION | ☐ Substantiated<br>☐ Unsubstantiated<br>☒ Unfounded |
| C/O _____ 22 _____ MADE THE COMMENT "I BUTTERSWORTH HAVE BIGGER TITTIES THAN SHE DOES AND I 22 WANT TO SEE THEM" | ☐ Substantiated<br>☐ Unsubstantiated<br>☒ Unfounded |

*Specific to .475 redactions, redact the victim's name and DOC #346269.*

# PREA Investigation Example

What redactions or withholdings would be required if this record were responsive to a request for "All PREA records related to PREA Case #12345" by a third-party requestor with no ROI?

| EMPLOYEE AND/OR OFFENDERS INVOLVED | |
|---|---|
| **Accused** | **Victim** |
| ☐ Unknown<br>Julie Papiaa | ☐ Unknown<br>Sinnerton, Micehel 395108 |

Please indicate the specific allegations and corresponding finding below, sign the form, and return by email (scan) with the complete investigation report to DOC PREA Triage. Additional lines may be added as needed.

| PREA ALLEGATION(S) (ADD / DELETE LINES AS NEEDED) | FINDING |
|---|---|
| 1. On or about August 10, 2021 WCC/IIU received information that a former CC2 possibly (Julie Papiaa) from SCCC was in contact by phone and Jpay with the I/I Sinnerton, Micehel # 395108. A quick review of calls and Jpay confirmed that they are in contact and involved in expressing their love. | ☒ Substantiated<br>☐ Unsubstantiated<br>☐ Unfounded |

# PREA Investigation Example

| EMPLOYEE AND/OR OFFENDERS INVOLVED | |
| --- | --- |
| **Accused** | **Victim** |
| ☐ Unknown <br> Julie Papiaa | ☐ Unknown <br> Sinnerton, Micehel 395108 |

Please indicate the specific allegations and corresponding finding below, sign the form, and return by email (scan) with the complete investigation report to DOC PREA Triage. Additional lines may be added as needed.

| PREA ALLEGATION(S) (ADD / DELETE LINES AS NEEDED) | FINDING |
| --- | --- |
| 1. On or about August 10, 2021 WCC/IIU received information that a former CC2 possibly (Julie Papiaa) from SCCC was in contact by phone and Jpay with the I/I Sinnerton, Micehel # 395108. A quick review of calls and Jpay confirmed that they are in contact and involved in expressing their love. | ☒ Substantiated <br> ☐ Unsubstantiated <br> ☐ Unfounded |

Redact the victim's name and DOC number.

# PREA Investigation Example

What redactions would be required if this record was responsive to a request for "All PREA records related to Prancer Rudolph Loverfield" by a third-party requestor with no ROI?

| EMPLOYEE AND/OR OFFENDERS INVOLVED | |
|---|---|
| **Accused** | **Victim** |
| ☐ Unknown | ☐ Unknown |
| Loverfield, Prancer Rudolph #318394 | Keepers, Baker #801321 |

Please indicate the specific allegations and corresponding finding below, sign the form, and return by email (scan) with the complete investigation report to DOC PREA Triage. Additional lines may be added as needed.

| PREA ALLEGATION(S) (ADD / DELETE LINES AS NEEDED) | FINDING |
|---|---|
| **Inmate-on-Inmate Sexual Abuse** It is alleged that on 8/2/2022 approx. 1825 hours I/I Loverfield sexually abused I/I Keepers by grabbed his genitalia over his pants. | ☒ Substantiated <br> ☐ Unsubstantiated <br> ☐ Unfounded |
| **Inmate-on-Inmate Sexual Harassment** It is alleged that on an unknown date and time I/I Loverfield sexually harassed I/I Keepers by repeated asking "me to pull down my pants and show him my cock and balls". | ☐ Substantiated <br> ☒ Unsubstantiated <br> ☐ Unfounded |

40

PREA Investigation Example

| EMPLOYEE AND/OR OFFENDERS INVOLVED | |
|---|---|
| **Accused** | **Victim** |
| ☐ Unknown | ☐ Unknown |
| Loverfield, Prancer Rudolph #318394 | Keepers, Baker #801321 |

Please indicate the specific allegations and corresponding finding below, sign the form, and return by email (scan) with the complete investigation report to DOC PREA Triage. Additional lines may be added as needed.

| PREA ALLEGATION(S) (ADD / DELETE LINES AS NEEDED) | FINDING |
|---|---|
| **Inmate-on-Inmate Sexual Abuse** It is alleged that on 8/2/2022 approx. 1825 hours I/I Loverfield sexually abused I/I Keepers by grabbed his genitalia over his pants. | ☒ Substantiated<br>☐ Unsubstantiated<br>☐ Unfounded |
| **Inmate-on-Inmate Sexual Harassment** It is alleged that on an unknown date and time I/I Loverfield sexually harassed I/I Keepers by repeated asking "me to pull down my pants and show him my cock and balls". | ☐ Substantiated<br>☒ Unsubstantiated<br>☐ Unfounded |

Per .475, redact all information related to any not substantiated finding, the victim, and incarcerated witnesses. Do not redact information related to substantiated allegations.

41

# PREA Investigation Example

**What redactions would be required if this record were responsive to a request for "All PREA investigation records from WSP in 2019?"**

| EMPLOYEE AND/OR OFFENDERS INVOLVED | |
|---|---|
| **Accused** | **Victim** |
| ☐ Unknown<br>Pinkerton, Jason #289223 | ☐ Unknown<br>Jaybird, Tommy #182553 |

Please indicate the specific allegations and corresponding finding below, sign the form, and return by email (scan) with the complete investigation report to DOC PREA Triage. Additional lines may be added as needed.

| PREA ALLEGATION(S) (ADD / DELETE LINES AS NEEDED) | FINDING |
|---|---|
| Offender to Offender: Sexual Assault<br>1. It is alleged incarcerate individual Pinkerton, Jason #289223 assigned to A116-5 entered cell A118 occupied by offender Jaybird, Tommy #182553. Pinkerton admitted to the hostage taking and added that there was kissing, hugging and oral sex taking place while in the cell but added that the contact was consensual. | ☒ Substantiated<br>☐ Unsubstantiated<br>☐ Unfounded |

42

## PREA Investigation Example

| EMPLOYEE AND/OR OFFENDERS INVOLVED | |
|---|---|
| **Accused** | **Victim** |
| ☐ Unknown | ☐ Unknown |
| Pinkerton, Jason #289223 | Jaybird, Tommy #182553 |

Please indicate the specific allegations and corresponding finding below, sign the form, and return by email (scan) with the complete investigation report to DOC PREA Triage. Additional lines may be added as needed.

| PREA ALLEGATION(S) (ADD / DELETE LINES AS NEEDED) | FINDING |
|---|---|
| Offender to Offender: Sexual Assault<br>1. It is alleged incarcerate individual Pinkerton, Jason #289223 assigned to A116-5 entered cell A118 occupied by offender Jaybird, Tommy #182553 Pinkerton admitted to the hostage taking and added that there was kissing, hugging and oral sex taking place while in the cell but added that the contact was consensual. | ☒ Substantiated<br>☐ Unsubstantiated<br>☐ Unfounded |

Redact the name and identifiers of the victim and any other I/I's except for the accused due to the substantiated finding.

43

# PREA Investigation Example

What redactions would be required if this record were responsive to a request for "All records related to PREA case #12345" by a third-party requestor with no ROI?

| EMPLOYEE AND/OR OFFENDERS INVOLVED | | |
|---|---|---|
| **Accused** | **Victim** | |
| ☐ Unknown | ☐ Unknown | |
| BATEMAN, Cander Jupiter          323284 | TEMPER, Shelly          9294340 | |
| STUFFER, Apple Sassy          827542 | ROSS, Cindy          318571 | |

| PREA ALLEGATION(S) (ADD / DELETE LINES AS NEEDED) | FINDING |
|---|---|
| **Allegations: 21-21504**<br><br>• It is alleged Apple Stuffer 827542 grabbed Cindy Ross 318571 breast and also attempted to grab Ross's crotch.<br>• It is alleged Apple Stuffer 827542 pretended to grab Shelly Temper 9294340 crotch and asked Temper if she wanted, "Some of this." | ☐ Substantiated<br>☑ Unsubstantiated<br>☐ Unfounded<br><br>☐ SUBSTANTIATED<br>☑ UNSUBSTANTIATED<br>☐ UNFOUNDED |
| **Allegation: 21-21505**<br><br>• It is alleged Cander Bateman 323284 put her arms around and held Cindy Ross 318571 while Apple Stuffer 827542 inserted her fingers into Anderson's vagina and anus repeatedly | ☐ Substantiated<br>☑ Unsubstantiated<br>☐ Unfounded |

# PREA Investigation Example

| EMPLOYEE AND/OR OFFENDERS INVOLVED | |
|---|---|
| **Accused** | **Victim** |
| ☐ Unknown | ☐ Unknown |
| BATEMAN, Cander Jupiter 323284<br>STUFFER, Apple Sassy 827542 | TEMPER, Shelly 9294340<br>ROSS, Cindy 318571 |

| PREA ALLEGATION(S) (ADD / DELETE LINES AS NEEDED) | FINDING |
|---|---|
| **Allegations: 21-21504**<br><br>• It is alleged Apple Stuffer 827542 grabbed Cindy Ross 318571 breast and also attempted to grab Ross's crotch.<br>• It is alleged Apple Stuffer 827542 pretended to grab Shelly Temper 9294340 crotch and asked Temper if she wanted, "Some of this." | ☐ Substantiated<br>☑ Unsubstantiated<br>☐ Unfounded<br><br>☐ SUBSTANTIATED<br>☑ UNSUBSTANTIATED<br>☐ UNFOUNDED |
| **Allegation: 21-21505**<br><br>• It is alleged Cander Bateman 323284 put her arms around and held Cindy Ross 318571 while Apple Stuffer 827542 insert her finger into Andersents anus | ☐ Substantiated<br>☑ Unsubstantiated<br>☐ Unfounded |

Specific to .475, redact the names and identifiers of the accused, victims and any I/I witnesses.

45

# Health Information

•RCW 42.56.475(1)(c), exempts health information in records other than an incarcerated individual's medical, mental health or dental files.

•Definition of an Incarcerated Individual for purposes of application of this exemption includes any individual currently or formerly under DOC jurisdiction. In short, all individuals with a DOC #.

•Custody records v. Treatment Records

46

# Definition of Health Information
## RCW 42.56.475(4)(a)

"Health information" means any information that identifies or can readily be associated with the identity of an incarcerated individual and directly relates to the following:

- Medical, mental health or dental services, treatments or procedures,
- Transgender, intersex, nonbinary, or gender nonconforming status,
- Sexual orientation,
- Genital anatomy
- Gender affirming care or accommodations, OTHER THAN, an incarcerated individual's preferred name, pronouns and gender marker.

47

# Health Information OR Identity

Remember that depending on how the request is worded you can either take out the health information itself (diagnosis, treatment, etc.) **OR** the identity of the individual who the health information pertains to (name, dob, DOC #, SSN's, FBI #'s, Cell assignment #, etc.).

If redacting identity and identifiers, ensure you always ask yourself, "**How identifying is it**"?

48

## Diagnosis & Conditions

- Medical, mental health, or dental diagnoses or conditions includes information about a medical, mental health, or dental diagnosis that is provided by any individual and is found outside of a medical, mental health, or treatment file.

- Such conditions include but are not limited to:
  - Sexually transmitted diseases;
  - Mental health conditions such as schizophrenia, depression, personality disorder, or anxiety; and
  - References to gender dysphoria, gender incongruence, or other diagnoses associated with transgender status like gender identity disorder, transvestism, and transsexualism.

## Services, Treatments & Procedures

Medical, mental health, or dental services, treatments, or procedures includes but is not limited to:

- Treatments or services like medical appointments, x-rays, or counseling;
- Specific information stating the purpose of the transportation for the means of obtaining medical, mental health or dental service. For example, the information related to the act of the transport itself would not be redacted but the "reason" for the transport (i.e. dialysis, hair removal, root canal) would be redacted;
- The names of medications or prescriptions;
- Participation in DOC health-based programs that require a medical diagnosis (e.g. HIV support group);
- Requests for or complaints about such treatments or services in a kite, grievance, resolution program filing, JPAY message, or email; and
- DOC services to provide accommodations for medical conditions including Health Service Requests (HSRs) and Accommodation Service Requests (ASRs) when the information details a medical, mental health or dental condition or diagnosis.

50

## Transgender, Intersex, Nonbinary, or Gender Nonconforming Status

Information relating to transgender, intersex, nonbinary, or gender nonconforming status includes any reference or information that relates to a person's status <u>except</u> their preferred name, pronouns, and gender marker, such as, for example:

- Terminology that directly discloses an individual's transgender status, like "assigned male at birth," "assigned female at birth," "trans," "transsexual," or "Two Spirit"; and
- Derogatory language like "he/she," "tranny," "she-male," "faggot," "biologically male," "biologically female," "genetically male," "genetically female," "transgendered," or "hermaphrodite."

51

## Sexual Orientation & Genital Anatomy

- Sexual orientation means an individual's romantic or sexual attraction or preference for other people, e.g., straight, gay, lesbian, bisexual, etc.

- Information about genital anatomy includes any information about or describing a person's genitals, e.g., a reference to a person having a penis.

# Gender Affirming Care or Accommodations

Gender-Affirming Care or Accommodations means any treatment, service, or activity that relates to transgender, non-binary, intersex, or gender non-conforming people's gender identity as well as requests for or complaints about such gender-affirming care or accommodations, and includes but is not limited to:

- References to gender-affirming healthcare like "sex change," "gender reassignment surgery," "gender affirming surgery," "gender confirmation surgery," "sexual reassignment surgery," "SRS," "GCS," "HRT," "hormone replacement therapy," "bottom surgery," "top surgery," "GD," hair removal, and speech counseling;
- Pre- or post-surgical prosthetics and durable medical equipment like vaginal dilators, breast forms, implants, and chest binders;
- References to the Gender-Affirming Care Review Committee (GA-CRC) or Gender-Dysphoria Care Review Committee (or GD-CRC);
- Reference to a HQ or facility MDT review for a transgender, intersex, or non-binary person;
- Participation in a transgender or LGBTQ peer support or therapy group;
- Participation with the gender-affirming care navigator or gender-affirming medical specialist;

53

# Gender Affirming Care or Accommodations Cont....

- DOC Forms 02-420 Preferences Request; 02-384 Housing Protocol for Transgender, Intersex, and Non-binary Individuals; 02-385 Housing Review for Transgender, Intersex, and Non-binary Individuals; and 02-422 Transgender, Intersex, and Non-binary Housing Multi-Disciplinary Team;
- Requests or discussions relating to transferring from a men's to a women's facility or vice versa;
- Requests to change a gender marker or counseling on changes in legal and identity documents;
- Gender-affirming alternative clothing (including OMNI alternative clothing fields), undergarments, and gender-affirming property like cosmetics;
- Search preferences or accommodations;
- Shower or bathroom accommodations.

## Terminology Definitions

**Transgender:** used both as an umbrella term and as an identity.  Broadly, it refers to those who do not identify with or are uncomfortable with their assigned gender and gender roles.  As an identity, the term refers to anyone who transgresses traditional sex and gender boxes.

**Intersex:** having hormones, chromosomes, and/or primary sex characteristics, including genitalia and/or internal sex organs, that are different from what is typically considered to be  biologically male or female.  This term is not the same as the term "hermaphrodite," which is an antiquated and offensive term to intersex folks and their allies.

**Nonbinary:** A person whose gender identity doesn't fit into the traditional gender binary structure of man or woman.

## Terminology Definitions

**Gender Non-Conforming:** A person who doesn't adhere to societal pressures to conform to gender norms and roles.

**Sexual Orientation:** Separate from gender identity, this term refers to how one identifies regarding the people to whom one is sexually or romantically attracted.  Orientation is not dependent on physical experience, but rather on feelings and attractions.

**Gender-Affirming Care:**  Refers to treatments, ranging from surgery to speech therapy, that support a transgender or nonbinary person in their gender transition.

**Gender Marker:**  Sometimes called a sex marker or sex designator, is a designation on an identifying document or in a database as male (M), female (F), or some other option like X, nonbinary, or undisclosed. This designation is traced back to your birth certificate.

56

## What is <u>NOT</u> Health Information?

- Information already exempt under RCW 42.56.360(2) and RCW 70.02,

- A person's preferred name, pronouns, and gender marker, and

- Information related to injuries, OTHER THAN injuries related to medical procedures or genital anatomy, contained in incident reports, infraction records, or use of force reports prepared by DOC staff other than health care providers.
  - For example, if a transgender individual has gender-affirming surgery and an incident report written by custody staff reports that the individual's stitches ripped, information about the surgery and injury will be redacted, or
  - If an infraction is written related to an alleged assault in which an individual's genitals were harmed, information that references the individual's type of genitals or descriptions of symptoms that would disclose the type of genitals will be redacted.

57

## Redaction v. Total Withholding

- If the existence of the record itself would disclose protected information specific to any individual, the records must be withheld in its entirety *(Examples include but are not limited to, DOC 02-420 Preferences Request Form or 02-384 Housing Protocol for Transgender, Intersex, and Non-Binary Individuals).*

- If existence of the record does not give away any information that is protected under the definition of health information, then the record should be redacted to protect any health information it may include.

58

# Health Info. Examples

P REPORTED UA WAS TAKEN SHE IS IN OUTPATIENT TX AT
LAKESIDE MILAM SHE JUST GOT OUT OF A 28DY REHAB
PROGRAM INTPATIENT TX THIS MORNING, P DIRECTED TO
REPORT BACK NEXT WEEK, P WILL RPEORT TO HER DOSA TX
THURSDAY WITH VERIFICATION OF INPATIENT TREATMENT SHE
JUST RELEASED FROM

What redactions would be required if this record were
responsive to a request for "All records related to inmate
Copper" by a third-party requestor with no ROI?

**DETAILED DESCRIPTION OF INCIDENT**
Who was involved, what took place, how did it happen; description of any injuries, damage, use of force, etc. Attach additional sheet, if necessary.

IMUN RN Acosta notified by OPC RN Reynolds of I/M Copper declaring medical emergency for
chest pain and unit RN Grimes not yet in unit, if RN Acosta could go evaluate. RN Acosta, with Sgt
Kaehler met with I/M Copper cellfront. I/M digressed from chest pain related issues to self-harm
intent and refused to contract with RN Acosta for safety. RN Acosta saw I/M Copper a second time cell
front to cooperate with custody to come out of cell to exam room for assessment and vital
signs. I/M Copper verbally refused to come out of house and previously shattered his plastic inhaler
and verbalized he would use the pieces to self harm. RN Acosta note contusion to forehead and
superficial scratches to left inner wrist. I/M Copper refused to contract for safety.

59



Specific to .475, redact all reference to treatment, including type of treatment, treatment location and details and medical and treatment information.

# Health Info. Examples

What redactions would be required if this record were responsive to a request for "All records related to inmate Daren" by a third-party requestor with no ROI?

I/I Daren sustained injury to the eyebrow which required three stitches, bruising and swelling to the bridge of his nose and various minor scrapes to fingers and knuckles. Post incident medical examinations including a CT head exam do not identify any serious injuries.

SHORT DESCRIPTION of what happened and how it affected you (ONE issue per grievance):
I want to grieve cws Baltzell, MHP Director B. Rainer, Karrie and Superintendant Ron Haynes for retaliation and descrimination against me. On 8/15/2022 I tried to hang myself in cell MHC4. While I was hanging I was sprayed with O.C. spray and then cut down from the noose around my neck (See use of force cell entry hand held video footage). Due to the continuation of retaliation of the SCCC defendance in PeterPan vs Robbinhood continuing to harrass and exerbate my mental illness by continuing to destroy all my incoming publications of magazines, books, photos and out-going legal mail to the 9th circuit court of Appeals and by illegally

What redactions would be required if this record were responsive to a request for "All records related to inmate Daren" by a third-party requestor with no ROI?

61



Specific to .475, redact descriptions of self harm, medical information, medical treatment, and mental illness.

# Health Info. Examples



**What redactions would be required if this record were responsive to a request for all records relating to transgender individuals at WCCW?**

currently living in his own apartment at 10504 Pacific HWY S #10 Tukwila, WA, 98168. He lives alone with no pets but plans to have his wife Alicia Silverston live with him when she releases from prison in about 30 days. His wife has a 20 yr. old daughter named Kenderjoy who currently lives with her grandparents. P stated he had just registered with the King Co. Sheriffs Office and was notified he will have to enroll into sex offender treatment. P is not currently employed and asked about whether he was permitted to have a phone as he does not have one now. Stated there was nothing in his J&S stating this but his board conditions might, advised him to discuss this with CCO Hansen at his NRD and look into a flip phone that does not have internet access just in case. Immediately prior to submitting to a UA 7 with CCO Beal, P provided that he is transgender. Crossgender UA avoided. P filled out the DOC 02-420 Preference Request. P prefers to be called by " "Boldman Hooper" and have females conduct searches and UAs. Form signed by CCS Dronk and given to support staff to be scanned into OnBase. Apologized for any confusion or misunderstanding and ensured this would not happen again in the future. Oral Swab administered this date and sent to the lab. Provided P with CCO Johnson's business card and directed him to report back on Tuesday 02/09/2023 by 2:00 pm to go over his board conditions.



Redact PII of the individual and associated family.

# Health Info. Examples



**What redactions would be required if this record was responsive to a request for "all records relating to Gorden Flash" by a third-party requestor without an ROI?**

currently living in his own apartment at 10504 Pacific HW S #10 Tukwila, WA, 98168. He lives alone with no pets but plans to have his wife Alicia Silverston live with him when she releases from prison in about 30 days. His wife has a 20 yr. old daughter named Kenderjoy who currently lives with her grandparents. P stated he had just registered with the King Co. Sheriffs Office and was notified he will have to enroll into sex offender treatment. P is not currently employed and asked about whether he was permitted to have a phone as he does not have one now. Stated there was nothing in his J&S stating this but his board conditions might, advised him to discuss this with CCO Hansen at his NRD and look into a flip phone that does not have internet access just in case. Immediately prior to submitting to a UA 7 with CCO Beal, P provided that he is transgender. Crossgender UA avoided. P filled out the DOC 02-420 Preference Request. P prefers to be called by " "Boldman Hooper" and have females conduct searches and UAs. Form signed by CCS Dronk and given to support staff to be scanned into OnBase. Apologized for any confusion or misunderstanding and ensured this would not happen again in the future. Oral Swab administered this date and sent to the lab. Provided P with CCO Johnson's business card and directed him to report back on Tuesday 02/09/2023 by 2:00 pm to go over his board conditions.



Withhold the housing protocol and other records (such as DOC Form 02-420) in their entirety because their existence connected with an individual necessarily discloses health information: their transgender, intersex, or non-binary status. In other records, redact all information relating to a person's gender-affirming accommodations and/or transgender status.

# Exemption Log Exception re: Health Info.

Specific to redactions and/or withholdings of "health information":

- Cite to RCW 42.56.475(1)(C) *without further explanation*.

Only the # of pages withheld should be included on the exemption log NOT any additional information usually required when withholding other types of exempt records.



67

## RCW 42.56.475

This training after completion will also be posted on the PRU SharePoint site for your ongoing reference.

If in doubt regarding the application of any of these exemptions as you are reviewing records, please consult this training and reach out to your supervisor to discuss.

